484 P.2d 628

Guy STILLMAN, Petitioner,

v.

Paul N. MARSTON et al., Respondents.

No. 10286.

Supreme Court of Arizona,
In Banc.

April 19, 1971.

Philip J. Shea and Robert A. L'Ecuyer, Phoenix, for petitioner.

Gary K. Nelson, Atty. Gen., by Frank J. Sagarino, Chief Asst. Atty. Gen., Moise Berger, Maricopa County Atty., by Albert I. Firestein, Chief Civil Deputy County Atty., Phoenix, for respondents.

CAMERON, Justice.

This is a special action brought in the Supreme Court by Guy Stillman (the petitioner) against each of the County Recorders of the fourteen counties in Arizona. Petitioner asks that this court:

1. prohibit the destruction of records of those who voted at the last election, and

2. declare § 16–150, subsec. D A.R.S. to be unconstitutional.

The petitioner, on 23 November 1970, filed with the Secretary of State his intention to circulate throughout the State an initiative petition to have placed on the ballot at the next general election, a measure to amend § 16–702 A.R.S. to advance the regular biennial primary elections from the eighth Tuesday prior to the general election to the first Tuesday in June prior to the general election.

This petition was to be circulated pursuant to Article 4, Part 1, § 1(2) of the Constitution of the State of Arizona, A.R.S. which reserves the right of initiative to the people. Paragraph (2) states:

"(2) [Initiative power] The first of these reserved powers is the Initiative. Under this power ten per centum of the qualified electors shall have the right to propose any measure, and fifteen per centum shall have the right to propose any amendment to the Constitution."

And Paragraph (7) reads:

"(7) [Number of qualified electors] The whole number of votes cast for all candidates for Governor at the general election last preceding the filing of any Initiative or Referendum petition on a State or county measure shall be the basis on which the number of qualified electors required to sign such petition shall be computed."

According to the pleadings, in order to effectuate this right a total of 41,141 qualified electors must sign the petition, to wit: 10% of the whole number of votes cast for all candidates for Governor in the last general election (1970). In 1970 the legislature enacted subsection D of § 16–150 A.R.S. which reads as follows:

"D. On the day immediately following the general election in 1970 and at intervals of ten years thereafter, the county recorder shall cancel all voter registrations in his county." § 16–150, subsec. D A.R.S.

Petitioner contends that cancellation by the county recorder of all voter registrations in his county on the day immediately following the general election in 1970, operates to unconstitutionally deprive him of his constitutionally guaranteed right of initiative by eliminating the entire class of persons eligible to sign his petition—qualified electors—until they have requalified by reregistering. Were this the effect of subsection D we would agree. We believe, however, that the effect of subsection D can be construed in harmony with petitioner's right to obtain the necessary signatures on his petition.

The provisions of our Constitution are mandatory (Art. 2, § 32 Arizona Constitution); but, whenever possible our statutes are to be construed so as to be in harmony with our Constitution. Hicks v. Krigbaum, 13 Ariz. 237, 108 P. 482 (1910); Oglesby v. Pacific Finance Corporation of California, 44 Ariz. 449, 38 P.2d 646 (1934); Prescott Courier, Inc. v. Moore, 35 Ariz. 26, 274 P. 163 (1929); Board of Regents v. Sullivan, 45 Ariz. 245, 42 P.2d 619 (1935); Hill v. County of Gila, 56 Ariz. 317, 107 P.2d 377 (1940). The federal courts have already held this statute, § 16–150, subsec. D to be in harmony with

the United States Constitution. Johnson et al. v. Marston, No. CIV. 70–352 Phx WEC, filed 27 November 1970. Judgment affirmed by the United States Supreme Court, 401 U.S. 968, 91 S.Ct. 1216, 28 L. Ed.2d 320 (1971).

To be eligible to vote in 1972 it is uncontroverted that each person must indeed re-register. His previous registration of 1970 will not operate so as to allow him to cast a ballot in the election of 1972. This does not mean, however, that the effect of the voting list is destroyed for all purposes. Under the total effect of the new section, § 16–150, subsec. D, no change is had in the qualifications necessary to register in this State to vote. All that is required is the additional act of re-registering at ten year intervals. In essence, the legislature has enacted a statute which provides that to be eligible for the primary and general election of 1972, every voter in the State must re-register prior to the close of registration in 1972.

§ 16–144 A.R.S. assures that cancellation is not tantamount to physical destruction:

"The county recorder shall provide a means of *permanently preserving* affidavits of registration and applications for *cancellation of registration.* Acceptable means of preservation shall be binders for the original affidavit or application, or photostatic or microfilm reproduction of the originals." (Emphasis added)

§ 16–148, subsec. C A.R.S. provides as follows:

"* * * Preservation of canceled affidavits

"C. The county recorder may provide for preservation of *canceled* affidavits of registration by microfilming, and upon microfilming of such affidavits, the original copies may be destroyed." (Emphasis added)

The affidavit filed in this cause by Paul N. Marston adequately reflects this procedure was being followed by the Maricopa County Recorder.

We have held that voter registration is the method to be used in determining who is a qualified elector for the purpose of signing an initiative petition:

"[I]t follows that there is no way, that is, no practical way, other than by relying on one's registration, to ascertain whether the signers of a petition possess these qualifications and that in consequence an elector who has failed to register and advise the public that he has them, may not legally attach his name to one. * * *" Ahrens v. Kerby, 44 Ariz. 337, 347, 37 P.2d 375, 379 (1934).

And we have allowed the use of the preceding voter registration list for the purposes of testing the sufficiency of the signatures on a subsequent recall petition:

"The registration then does not die and becomes *functus officio,* with the general and primary elections of the year it is made. It holds good '* * * at least until the next succeeding registration period has *expired,* unless the Legislature had otherwise directed'." Abbey v. Green, 28 Ariz. 53, 71–72, 235 P. 150, 157 (1925). (Emphasis added)

In Ahrens v. Kerby, supra, we also allowed the usage of the preceding voter registration list for purposes of validating the signatures on the petition *as well as the list then being made,* noting that the proximity of the filing requirement to the opening of re-registration made it "practically impossible to secure from them [the newly registered voters] the necessary number of signers":

"And while, it is true, one could not vote on a measure at the following election unless he registered therefor, yet *his registration for the preceding election,* being good until the one then in the making for the election later on that year had been completed, *disclosed that he possessed the necessary qualifications of an elector and placed him in a situation wholly different from that of a person who had registered for neither election.*" Ahrens v. Kerby, supra, 44 Ariz.

at 349, 37 P.2d at 380. (Emphasis added)

 This position is supported by the statute which defines "qualified electors" as follows:

"§ 16–104. Qualified elector defined

"A person whose name appears on the register for the last preceding general election, or a person who has registered under a subsequent registration, shall, if otherwise qualified, be deemed a qualified elector for any purpose for which such qualification is required by law."

It is apparent for the purposes of circulating initiative petitions pursuant to Article 4, Part 1, § 1(2) of our Constitution, that petitioner may rely upon the voter registration list used for the general election of 1970 and the list being prepared for the general election of 1972. Subsection D does not deprive petitioner of his right under the Constitution to circulate initiative petitions for the 1972 general election.

We therefore hold that § 16–150, subsec. D is not unconstitutional in its operation as that section affects those rights reserved to the people under Article 4, Part 1, § 1(2) of our Constitution. Therefore, the various county recorders may not, as the statute § 16–144 A.R.S. indicates, destroy the affidavits of registration from the 1970 election and they may be used to support the legality of signatures affixed to the initiative petitions of petitioner. After the 1972 elections, the new list will be the one used for this purpose.

The prayer of petitioner asking that we prohibit the destruction of records of those who voted at the last election is hereby granted, it being understood that preservation of the records pursuant to § 16–144 and § 16–148, subsec. C A.R.S. shall be considered to be in compliance with this order. The prayer that we declare § 16–150, subsec. D A.R.S. unconstitutional is denied.

STRUCKMEYER, C. J., and HAYS, V. C. J., UDALL and LOCKWOOD, JJ., concur.