603 So.2d 528 (1992)
Robin C. KRIVANEK, Supervisor of Elections, Hillsborough County, Appellant,
v.
The TAKE BACK TAMPA POLITICAL COMMITTEE and Richard M. Clewis, III, Appellees.
No. 91-04045.
District Court of Appeal of Florida, Second District.
July 1, 1992.
*529 Lynn Cash, Asst. County Atty., Tampa, and Yeteva Kemp Hightower, Asst. Gen. Counsel, Tallahassee, for appellant.
G. Donovan Conwell, Jr., of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellees.
DANAHY, Judge.
This is an appeal from an order granting the petition for Writ of Mandamus and the Peremptory Writ which ordered the appellant, Robin Krivanek, the Hillsborough County Supervisor of Elections, [Supervisor] to count the signatures of certain electors on a city referendum petition which was submitted to her for certification. The single issue presented on appeal is whether those petition signers whose names had been temporarily withdrawn from the Supervisor's permanent registration books were "qualified electors" for the purpose of signing the petition. We agree with the circuit court that they were and, accordingly, affirm the issuance of the writ requiring the Supervisor to count their signatures if otherwise valid.[1]
The pertinent facts of this case are summarized as follows. The appellees, The Take Back Tampa Political Committee and its chairman, Richard M. Clewis, III, [TBT] initiated a petition drive which sought to put to a city-wide vote the question of repealing city ordinance 91-88. The Tampa city charter, section 10.07, authorizes such an election if a referendum petition is certified as signed by a requisite number of qualified electors, i.e., registered voters who live in the city. During the petition drive, the Supervisor withdrew from her permanent registration books the names of registered voters who had not voted in the last two years and who had not returned a response card to her indicating they wished to remain voters. Section 98.081(1) of the Election Code required her to accomplish this procedure at some time during each odd-numbered year. At this point, the names are "temporarily withdrawn" but not yet "removed" under the circumstances required by section 98.081(2). When the petition was submitted to the Supervisor, she refused to count the signatures of those registered voters she had temporarily withdrawn. Without those signatures, the petition did not have the requisite number for certification by the Supervisor in order to place the question before the entire city electorate.[2] TBT sought and was granted a writ of mandamus to have the Supervisor count the signatures she had not counted previously if they were otherwise valid. The Supervisor complied with the writ of mandamus which resulted in a determination *530 that the petition contained a sufficient number of valid signatures to place the issue on the ballot. She also appealed the issuance of the writ arguing that the circuit court's construction of the statute  which compelled her to count as registered voters persons not on her permanent registration books  was contrary to legislative intent.
In deciding this case, we are aided by the comprehensive analysis in the final order of the circuit court which includes, in pertinent part, the following:
ISSUE I: Eligibility of Electors temporarily withdrawn from the voter registration list to petition the city
The first issue before the court is whether the Supervisor may be commanded to accept signatures of electors who were temporarily removed, or in the process of being temporarily removed, from the active voter registration list at the time the Supervisor was attempting to verify the signatures on the petition. The relevant facts presented to the court are that on May 16, 1991, pursuant to section 98.081(1), Florida Statutes, the Supervisor of Elections for Hillsborough County mailed forms to all registered voters who had not voted in the last two years. On June 21, while TBT was circulating the referendum petition, the Supervisor compiled a list of over 25,000 electors to be withdrawn from the active voter registration list. Of the signatures on the petition at issue, the Supervisor rejected 462 because the electors who signed had been temporarily withdrawn pursuant to Section 98.081(1). Four hundred and ten of these electors were withdrawn during the pendency of the petition; 52 had been removed prior to the circulation of the petition. The Supervisor did accept signatures of persons being removed from the list if they signed the petition before June 21, the date the Supervisor began removing names from the list.
The procedure for periodically updating the registration rolls is set out in Section 98.081, Florida Statutes. The pertinent provisions of this section read as follows:
(1) During each odd-numbered year, the supervisor shall mail, to each elector who, during the past two years, did not vote in any election in the county or did not make a written request that his registration records be updated, a form to be filled in, signed and returned by mail within 30 days after the notice is postmarked. The form returned shall advise the supervisor whether the elector's status has changed from that of the registration record. Electors failing to return the forms within this period shall have their names withdrawn temporarily from registration books ... The list of electors temporarily withdrawn shall be posted at the courthouse. When the list is completed, the supervisor shall provide a copy thereof, upon request, to the chairman of the county executive committee of any political party .. . A name shall be restored to the registration records when the elector, in writing, makes known to the supervisor that his status has not changed .. . The supervisor shall then reinstate the name on the registration books without requiring the elector to reregister ... This is not a reregistration but a method to be used for keeping the permanent registration list up to date.
(2) The name of any elector temporarily withdrawn from the registration books shall be removed from such books if the elector fails to respond to the notice mailed pursuant to subsection (1) within 3 years from the date the last such notice was mailed to him, and such person shall be required to reregister to have his name restored to the registration books.
The supervisor has a duty under Section 100.361(d), Florida Statutes, to determine whether the "petition contains the required valid signatures." The Supervisor maintains that she did not breach this duty when she rejected the 462 signatures because persons temporarily withdrawn from the rolls are no longer qualified voters. She argues that to be a *531 qualified elector, Article VI, Section 2, of the Florida Constitution, requires that one must be registered as provided by law. In the case of a person temporarily removed from the rolls, the Supervisor contends that that person is not actively registered until he completes the affirmative act of notifying the Supervisor of his status. Furthermore, maintains the Supervisor, the burden should be on the petitioners to determine whether persons signing are actively registered, especially since petitioners knew that a purging process was underway when they began circulating the petition. Finally, the Supervisor states that the procedure she followed is the same as that followed in every other county in this state.
T argues that the Supervisor's strict construction of the statutory requirements violates petitioners' fundamental rights to vote and petition. T maintains that registered voters do not lose their legal status as electors if their names are temporarily removed from the registration list. They contend that the legislative intent on this point is clear. TBT points out that Section 98.081(1), Florida Statutes, still refers to persons withdrawn as "electors." Only if an elector fails to notify the supervisor of his status after three years of being on the inactive list does the elector lose his legal status as an elector and become referred to as a "person" under the statute. See § 98.081(2), Fla. Stat. In addition, TBT argues that Section 98.081(1) specifically states that it is not requiring reregistration, but is merely setting up a method for bookkeeping. Therefore, TBT argues that the Supervisor breached her duty pursuant to Section 100.361(d) and (h), Florida Statutes, to count the number of valid signatures on the petition.
A. ELECTORS TEMPORARILY WITHDRAWN FROM THE VOTER REGISTRATION ROLLS PURSUANT TO § 98.081(1), FLA. STAT. RETAIN THE LEGAL STATUS OF "ELECTORS"
The exercise of the right to petition is a form of democratic expression at its purest. This fundamental right is recognized in the First Amendment to the United States Constitution which states that Congress shall make no law abridging the freedom to petition the Government for a redress of grievances. Florida also recognizes the right of its people to petition the government. Art. I § 5, Fla. Const. Locally, Section 10.07 of the Tampa City Charter gives the qualified voters of the city the power to require reconsideration by petition of any adopted ordinance. Also, as stated in Advisory Opinion 91-01, Florida Division of Elections, the right to petition is an inherent and absolute right in contrast to the right to vote which derives from constitutional or statutory grant.
Even an absolute right, however, may be subject to reasonable regulation, and neither party to this case disputes that Section 98.081, Florida Statutes, is facially constitutional. It is well established that the legislature may properly require electors to register to vote and to update registration records periodically, so long as the burden imposed is minimal and incidental. Smith v. Smathers, 372 So.2d 427 (Fla. 1979); Williams v. Osser, 350 F. Supp. 646 (E.D.Penn. 1972); Duprey v. Anderson, 184 Colo. 70, 518 P.2d 807 (1974); cf. Michigan State UAW Community Action Program Council v. Austin, 387 Mich. 506, 198 N.W.2d 385 (1972). However, laws limiting the exercise of voting rights should be liberally construed in favor of giving voters a voice. State ex rel. Whitley v. Rinehart, 192 So. 819 (Fla. 1939); Boardman v. Esteva, 323 So.2d 259 (Fla. 1975); State v. Rinehart, 140 Fla. 645, 192 So. 819, 823 (1939); In re Nomination Petition of Justin Johnson, 502 A.2d 142 (Pa. 1985); 1991 Op.Div. of Elections Fla. 91-01 (Feb. 4, 1991). Therefore this court will uphold only those restrictions on the right to petition which are expressly required by law.
Eligibility to petition is prescribed by ordinance and statute. Section 10.07 of the Tampa City Charter provides that "qualified voters" may petition and that *532 the form and content of the petition shall be as provided for under the provision relating to recall of officers (§ 100.361(1), Fla. Stat.). Section 100.361, Florida Statutes, provides that "electors of a municipality" are eligible to sign the petition. "Elector" is defined as being synonymous with the word "voter" or "qualified elector or voter." § 97.021, Fla. Stat.
Article 1, Section 5 of the Florida Constitution defines "elector" as follows:
Every citizen of the United States who is at least twenty-one years of age and who has been a permanent resident for one year in the state and six months in a county, if registered as provided by law, shall be an elector of that county.
The statutes define a qualified elector as
"any person 18 years of age who is a citizen of the United States and a legal resident of Florida and the county where he wishes to register" and who registers to vote. § 97.041(1)(a), Fla. Stat.
None of these provisions specifically addresses the legal effect of being temporarily withdrawn from the registration rolls pursuant to Section 98.081(1). It is clear that the legislature intended to require electors to update their registration records, but it does not necessarily follow that the Supervisor is correct in assuming that withdrawal from active registration renders electors ineligible to petition.
Contrary to the Supervisor's assertion, being placed on the withdrawal list is not the legal equivalent of never having registered or having been permanently removed from the rolls. Inactivated electors have already registered to vote, and, thus, it has already been determined that these people are legally qualified to be electors. In addition, Section 98.081(1), Florida Statutes, states that the withdrawal procedure is not a reregistration, but a method for recordkeeping. Thus, those on the withdrawal list are not required to reregister unlike those who are permanently removed. See § 98.081(2). Rather, the statute places a minimal burden on those temporarily removed to notify the supervisor of their status.
Another distinction is that many of those whose names the Supervisor rejected were clearly intended by the city government to be included in the petition process. Section 10.07 of the Tampa City Charter states that a petition must be signed by electors of the city equal in number to not less than 10 percent of the electors of the city qualified to vote at the last general municipal election. Four hundred and ten of the names rejected had been on the active rolls at the last preceding election. Thus these electors, unlike unregistered persons, were counted in determining the number of signatures to be obtained on the petition. The legislature specifically included these electors in the petition process. Therefore, these electors should not have their right to petition disenfranchised during an open registration period. See Stillman v. Marston, 484 P.2d 628 (Ariz. 1971).
Furthermore, unlike those who are not registered to vote (see § 98.051, Fla. Stat.), those on the inactive list may vote even if they have not been reactivated before the closing of the registration books, provided that they sign an affidavit at the polls verifying that their status has not changed. In addition, as petitioner argued, the legislature continued to refer to persons on the withdrawal list as "electors," thereby indicating that their legal status had not changed. See § 98.081(1).
Therefore, the Supervisor has overlooked important distinctions between those who are not registered to vote and those whose names have been temporarily withdrawn from the active rolls. She argues, however, that she is compelled by the statute to purge the rolls every two years of those who do not vote and that this purge affects the status of electors for all purposes. This interpretation is too strict. In keeping with a liberal construction standard, the general rule is that statutes providing for the revision of the registration books at stated times to maintain accurate records *533 will not affect an elector's eligibility to exercise of other voting rights unless such an intent appears in the statute. See 25 Am.Jur.2d § 110; Stillman v. Marston, 107 Ariz. 208, 484 P.2d 628 (1971). Nothing in the Florida statute regulates electors on the inactive list to a status equal to that of an unregistered person. On the contrary, for the above-stated reasons, it is obvious that those on the withdrawal list remain electors of the city. Therefore, it appears that the Supervisor has not complied with her duty to count the valid signatures of the electors of the city.
The Supervisor's application of the statute is also inconsistent; she places less restrictions on the right to vote than on the right to petition. At any point during the three years that a person may be temporarily withdrawn from the registration rolls, that person may vote. He may simultaneously update his status and exercise his right to vote by signing an affidavit at the polls. In contrast, the Supervisor has read Section 98.081 to preclude a person's right to petition unless that person has updated his status prior to signing the petition. Placing more restrictions on the right to petition contravenes the directive from the Division of Elections that "provisions relating to the right to petition the government should also be construed liberally to preserve an individual's absolute right to petition their government." See Florida Division of Elections, Opinion 91-01.
In rejecting the signatures of those electors placed on the temporary withdrawal list, the Supervisor relied primarily on Advisory Opinion 87-16 from the Division of Elections, State of Florida, which states the following:
An elector whose name has been temporarily removed from the registration books pursuant to Section 98.081(1), Florida Statutes, is not on the registration books. If the elector's name is not on the registration books when a supervisor is verifying the signatures on a petition, the supervisor may not verify the elector's signature for a petition.
This opinion is not persuasive. Again, it equates those on the temporary withdrawal list with those whose names have been permanently removed or who never registered. As stated previously, such a construction is not proper. Also, the opinion states that the reason for not accepting signatures from temporarily withdrawn electors is that it is not possible to verify a signature not on the rolls. However, nothing precludes the supervisor from referring to the signature cards on record to verify the signatures. The supervisor is required by statute to maintain these records because she must reactivate an elector when the elector makes known to the supervisor that his status has not changed. § 98.081(1), Fla. Stat. In addition, the Supervisor testified at her deposition that these records had not been removed from her computer files at the time the signatures were being verified at her office. ([S]ee pg. 21 of the deposition of Robin Krivanek[.)] Therefore, the Supervisor has the records available to verify the signatures.
The Supervisor's [sic] makes two final arguments in opposition to accepting withdrawn names. First, she maintains that if she were required to accept signatures of withdrawn electors, it is conceivable that she would be compelled to accept a petition signed only by persons who were withdrawn. Second, she argues that inactive electors should not be permitted to sign because electors who were inactive prior to the last municipal election were not included in the count of signatures required to petition the city pursuant to § 10.07 of the Tampa City Charter. She argues that if they are included in the right to petition, they should likewise be included in the count of signatures required, thereby increasing the number of signatures required considerably.
The court can find no merit in the first argument. The only basis the court can conceive for excluding those who [are] on the temporary withdrawal list and who are otherwise qualified to vote might be to insure that when the issue is before the voters on referendum, someone will *534 vote on it. However, there is no requirement that a person signing a petition must vote on the issue if it is put before the voters. In addition, those signing the petition are actively participating in the democratic process, and the court can find no reason to distinguish the act of petitioning from the act of voting, for these purposes.
Similarly, the legislature has not restricted the right to petition to those included in the count of the number of signatures required. Conceivably, any one [sic] who registered to vote after the last election could sign the petition. The court cannot deny qualified electors who sign a petition their right to petition simply because the Supervisor did not count them in determining the number of signatures the petitio[n] required. The court notes that the Supervisor may be correct in asserting that persons on the inactive list at the last election should be included in the count because they are "qualified voters;" [sic] however, the method of determining the number of signatures required is not before the court.
B. ELECTORS WHO SIGN A PETITION PURSUANT TO § 10.07 OF THE TAMPA CITY CHARTER AND § 100.361, FLA. STAT. HAVE COMPLIED WITH THE WRITTEN NOTICE REQUIREMENT OF § 98.081(1), FLA. STAT.
Another compelling argument for accepting the signatures of those electors on the inactive list is the fact that in signing the petition, the elector has in effect notified the supervisor that his status has not changed. The Supervisor argued that electors on the inactive list were distinguishable from active voters in that they were required to perform an affirmative act before being restored to active status  the elector must make known to the supervisor, in writing, that his status has not changed. The Supervisor assumed that all those whose names appeared on her list had failed to perform this act. However, she overlooked the fact that the signing of the petition was such an act. The petition contained, in writing, the signature, current address, and precinct number of the elector  the same information requested on the form sent out to voters pursuant to § 98.081(1), Fla. Stat. Under a liberal construction of § 98.081(1), the supervisor should reactivate an elector who provides the necessary information on the petition, especially since the statute's purpose in maintaining accurate records could be achieved by accepting the information provided.
The Division of Elections follows a similar procedure in using the information provided on the petition to record a change of address of an active registered voter. The Division of Elections Advisory Opinion 91-01 states that the act of signing the petition constitutes notice that the elector has moved to a new address within the county and is therefore eligible to sign the petition in accordance with § 97.091(2)(a), Fla. Stat. The Supervisor argues that this procedure should not be followed in the case of electors on the temporary withdrawal list because their status is different from that of an active voter. Again, this strict interpretation is not statutorily mandated and contravenes a liberal construction of the applicable law.
C. ACTUAL TIMING OF SUPERVISOR'S PURGE AND NOTICE OF THE PURGE PROCESS DOES NOT AFFECT ELECTORS' ELIGIBILITY TO PETITION
One final point raised by both parties relates to the timing of the purge and when the purge should be given legal effect. The Supervisor maintains that June 21, 1991, is the operative date because the 30-day grace period had expired and she had identified the names to be placed on the purge list. T argues that the operative date should be a date subsequent to her review of the signatures since the actual removal of the names was not complete until sometime in October. The timing of the purge is not an issue, however, since this court has found that the signing of the petition constitutes sufficient notice under § 98.081(1).
Similarly, whether or not TBT had notice of the purge process before it began *535 circulating the petition is not relevant. It appears that the Supervisor knew that TBT would be circulating petitions during the time in which she would be purging the rolls and TBT knew that the purge process was underway. Since the electors were qualified to sign and the act of signing provided the notice required for reactivation of their status, neither party's knowledge of the other party's intentions has any effect on the outcome of this decision.
We agree with the circuit court that the legislature has not expressly revealed what legal status was intended during the interim period after the elector has been placed on the "temporarily withdrawn" list pursuant to section 98.081(1) but before being "removed" from the registration books pursuant to section 98.081(2). The legislature has, however, clearly expressed its intention that a qualified elector remains "qualified" for three years before the qualification is definitively lost because it is only after that three-year period has passed that the person must register anew to once again become a qualified elector under subsection (2) of the statute. The interpretation placed on subsection (1) by the circuit court is correct: City electors who were placed on the Supervisor's "temporarily withdrawn" list retain their legal status as qualified electors for purposes of signing a referendum petition and were thus eligible to have their signatures counted by the Supervisor if their signatures were otherwise valid.
We have carefully considered the authorities cited to us by the Supervisor, especially State ex rel. Kyle v. Brown, 167 So.2d 904 (Fla. 3d DCA 1964), but we find them all distinguishable or unpersuasive.
Because the circuit court correctly interpreted the statute, we affirm the order and approve the issuance of the writ.
LEHAN, C.J., and SCHOONOVER, J., concur.
NOTES
[1] While the circuit court discusses constitutional aspects in its order, the Supervisor raises only issues involving statutory construction, and we decide the case on those grounds alone.
[2] There were other issues before the circuit court concerning technical defects in the petition which caused certain signatures to go uncounted. Those issues are not before this court.