625 So.2d 840 (1993)
Robin C. KRIVANEK, as Hillsborough County Supervisor of Elections, Petitioner,
v.
The TAKE BACK TAMPA POLITICAL Committee, et al., Respondents.
No. 80189.
Supreme Court of Florida.
September 30, 1993.
Emeline C. Acton, County Atty., and John J. Dingfelder, Asst. County Atty., Tampa, for petitioner.
*841 G. Donovan Conwell, Jr., Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for respondents.
OVERTON, Justice.
We have for review Krivanek v. Take Back Tampa Political Committee, 603 So.2d 528 (Fla. 2d DCA 1992), in which the district court of appeal affirmed the trial court's issuance of a writ of mandamus that required Robin C. Krivanek, as the Supervisor of Elections of Hillsborough County, to count and validate the petition signatures of 462 voters whose names had been temporarily purged from the permanent registration books of Hillsborough County under the provisions of section 98.081, Florida Statutes (1991). We find that the district court's decision in this case expressly affects a class of constitutional officers, specifically, how supervisors of elections are to determine the validity of signatures on initiative petitions. Consequently, we have jurisdiction under article V, section 3(b)(3), of the Florida Constitution. For the reasons expressed, we find that electors whose names have been temporarily removed from the voter registration books are not qualified to sign initiative petitions under the statutory legislative scheme that establishes voter qualifications, and we quash the district court's decision. This case involves the construction of section 98.081, which provides, in pertinent part:
(1) During each odd-numbered year, the supervisor shall mail, to each elector who, during the past 2 years, did not vote in any election in the county or did not make a written request that his registration records be updated, a form to be filled in, signed, and returned by mail within 30 days after the notice is postmarked. The form returned shall advise the supervisor whether the elector's status has changed from that of the registration record. Electors failing to return the forms within this period shall have their names withdrawn temporarily from registration books. In addition, the name of an elector may be removed temporarily from the registration books when any first-class mail sent by the supervisor to the elector is returned as undeliverable. Such name shall not be removed until a diligent effort has been made by the supervisor to locate such elector. This shall constitute such notice for purposes of this section. The list of the electors temporarily withdrawn shall be posted at the courthouse. When the list is completed, the supervisor shall provide a copy thereof, upon request, to the chairman of the county executive committee of any political party, and the supervisor may charge the actual cost of duplicating the list. A name shall be restored to the registration records when the elector, in writing, makes known to the supervisor that his status has not changed. A federal postcard application from a citizen overseas indicating that the elector's status has not changed shall constitute such a written notification to the supervisor. The supervisor shall then reinstate the name on the registration books without requiring the elector to reregister. Notice of these requirements shall be printed on the voter registration identification card. This method prescribed for the removal of names is cumulative to other provisions of law relating to the removal of names from registration books. This is not a reregistration but a method to be used for keeping the permanent registration list up to date.
(2) The name of any elector temporarily withdrawn from the registration books shall be removed from such books if the elector fails to respond to the notice mailed pursuant to subsection (1) within 3 years from the date the last such notice was mailed to him, and such person shall be required to reregister to have his name restored to the registration books. Receipt of a federal postcard application shall constitute written authorization for such a reregistration.
As indicated by this section, supervisors of elections are required, during each odd-numbered year, to mail information cards to registered voters who have not voted in the last two years. Under the provisions of the statute, the names of voters who fail to return the information cards are "temporarily" purged from the permanent registration books. The name of any voter who fails to respond to the supervisor within three years *842 of temporary removal is "permanently" removed from the registration books and must reregister to have the voter's name restored. The purpose of these provisions is to assure that voters who have not voted in the last two years are still alive and still reside at the locations indicated on the voter registration rolls.
During the time that the Hillsborough County Supervisor of Elections was purging her voter records in accordance with section 98.081, The Take Back Tampa Political Committee (the Committee) initiated a petition drive pursuant to the Tampa City Charter seeking to repeal a city ordinance through a city-wide vote. When the Committee obtained the requisite number of signatures, it submitted the petition to Krivanek to count and validate the signatures pursuant to section 100.361(d), Florida Statutes (1991). Krivanek refused to validate the petition signatures of 462 voters whose names had been temporarily purged from her permanent registration books. As a result, the Committee did not have enough signatures to place the issue on the ballot.
On petition of the Committee, the trial court issued a writ of mandamus requiring Krivanek to count the signatures of those voters whose names had been temporarily, but not permanently, removed from the registration books if the signatures were otherwise valid. Krivanek complied with the mandamus and validated the petition, but filed an appeal with the Second District Court of Appeal in which she argued that the circuit court erroneously construed the statute in issuing the writ of mandamus.
The district court affirmed the trial court, finding that the legislature has clearly expressed its intention that an elector remains "qualified" to vote or to sign petitions for three years after being temporarily removed from the voter registration books "because it is only after that three-year period has passed that a person must register anew to once again become a qualified elector under [section 98.081]." Krivanek, 603 So.2d at 535. In so finding, the district court incorporated the trial court's final order into its opinion. In that final order, the trial court determined that, similar to restrictions on the right to vote, restrictions on the right to petition must be liberally construed in favor of the petitioner.
Krivanek, as Supervisor of Elections, claims that the district court's decision erroneously affirmed the trial court's issuance of the writ of mandamus. In support of that claim, she raises three issues, stating that: (1) the Committee has no standing to bring this action; (2) the district court erred in determining that voters whose names had been temporarily removed from the registration books retained their legal status as qualified voters; and (3) the district court erred in adopting the circuit court's analysis of the Committee's constitutional rights. Additionally, Krivanek contends that, even should this Court rule in favor of the Committee on these three issues, this case must still be remanded for a decision as to how many qualified electors existed at the last municipal election. Krivanek bases this contention on the rationale that the district court's construction of the statute would effectively increase the number of qualified voters and, consequently, increase the actual number of signatures necessary to qualify the petition.
With regard to the first issue, we find that Krivanek has waived the right to raise the issue of standing because this issue has been raised for the first time in her petition to this Court. The issue of standing should have been raised as an affirmative defense before the trial court, and Krivanek's failure to do so constitutes a waiver of that defense, precluding her from raising that issue now. See, e.g., Cowart v. City of West Palm Beach, 255 So.2d 673 (Fla. 1971).
Next, we address Krivanek's second and third issues. The second is whether the district court erred in determining that voters whose names had been temporarily removed from the registration books retained their legal status as qualified voters so as to enable their signatures to be counted in validating the petition. The third issue concerns certain constitutional rights of the Committee, as articulated in the circuit court's judgment.
Krivanek asserts that, under section 98.081, once an elector's name has been temporarily *843 purged from a supervisor's permanent registration system, the elector is ineligible to vote or sign a petition until "the elector, in writing, makes known to the supervisor that [the elector's] status has not changed." (Emphasis added.) Krivanek, as the Supervisor of Elections, emphasizes that, in refusing to validate the signatures at issue, she acted in accordance with Division of Elections advisory opinion 87-16, which interprets section 98.081. That opinion states that temporary removal under section 98.081 not only prohibits an elector from voting but also prohibits an elector from validly signing an initiative petition. Additionally, although Krivanek readily admits that she has a clear legal duty to verify the signatures, she contends that no clearly defined method for performing that duty exists. As such, she asserts that she is to use her "best judgment" in determining the method for verifying signatures. In applying that judgment in counting and validating the signatures at issue, she relied on the Division of Elections opinion and refused to validate the signatures.
The Committee, on the other hand, asserts that the electors' signatures should be counted because such electors, by signing the petition, effectively notified Krivanek, in writing, of their status so as to reinstate themselves to the active voter registration list. The Committee contends that Division of Elections advisory opinion 91-01 supports this position. Additionally, the Committee notes that the legislature, in section 98.081, continues to refer to an individual as an "elector" even after the individual's name has been temporarily removed from the permanent registration list; however, after permanent removal, an individual is referred to as a "person" rather than an "elector." Further, the Committee stresses that, while a voter whose name has been temporarily removed from the registration list need only notify the supervisor in writing to be eligible to vote, a voter whose name has been permanently removed must completely reregister to vote. Because election laws should be construed liberally in favor of the right to vote, the Committee argues that the legislature's continued use of the term "electors" for temporarily removed voters in section 98.081 should be construed to allow their signatures to be counted and validated. This is because, in their view, the electors were still "qualified voters" within the meaning of the Tampa City Charter.
The Tampa City Charter authorizes the particular petition at issue. Section 10.07 of that charter provides that the "qualified voters" of the city may require reconsideration of any adopted ordinance by petition. Such a petition is similar in nature to the initiative petition authorized by article XI, section 3, of the Florida Constitution, and, as indicated by the trial court, is a form of democratic expression derived from the First Amendment of the federal constitution and article I, section 5, of the Florida Constitution.
Citizens have the unquestioned right to petition their governments for redress of what they believe are grievances. U.S. Const. amend. I; Fla. Const. art. I, § 5. One means of preserving this right is through the procedures of initiative, referendum and recall.
Diaz v. Board of County Comm'rs, 502 F. Supp. 190, 193 (S.D.Fla. 1980).
Given its constitutional underpinnings, the right to petition is inherent and absolute. This does not mean, however, that such a right is not subject to reasonable regulation. Quite the contrary, reasonable regulations on the right to vote and on the petition process are necessary to ensure ballot integrity and a valid election process. See, e.g., State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561 (Fla. 1980) (legislature and secretary of state may impose reasonable regulations on process of petition validation to ensure expeditious and proper verification of petition signatures). Section 98.081's requirements are an example of such reasonable regulations.
In interpreting section 98.081, the Division of Elections expressly addressed the issue of whether an elector who had been temporarily removed from the permanent registration records is prohibited from signing a petition by stating the following:
Section 98.081(1), Florida Statutes, further provides that an elector's name will be restored to the registration records without *844 reregistration when the elector makes known to the supervisor in writing that his status has not changed.
An elector whose name has been temporarily removed from the registration books pursuant to Section 98.081(1), Florida Statutes, is not on the registration books. If the elector's name is not on the registration books when a supervisor is verifying signatures on a petition, the supervisor may not verify the elector's signature for a petition.
Op.Div.Elec.Fla. 87-16 (1987), partially receded from on other grounds, Op.Div.Elec. Fla. 91-01 (1991) (emphasis added). Supervisors of elections are bound by advisory opinions of the Division of Elections until such opinions are amended or revoked. § 106.23, Fla. Stat. (1991). Moreover, although not binding judicial precedent, advisory opinions of affected agency heads are persuasive authority and, if the construction of law in those opinions is reasonable, they are entitled to great weight in construing the law as applied to that affected agency of government. Lee v. Dowda, 155 Fla. 68, 19 So.2d 570 (1944); Beverly v. Department of Business Regulation, 282 So.2d 657 (Fla. 1st DCA 1973); Haines v. St. Petersburg Methodist Home, Inc., 173 So.2d 176 (Fla. 2d DCA), cert. denied, 183 So.2d 211 (1965). We do not find the interpretation rendered by the Division of Elections to be unreasonable or unduly burdensome. Indeed, we find that such an interpretation seeks to fulfill the primary purpose behind chapter 98, that is, to assure integrity in the election process. The prevention of fraud and the maintenance of up-to-date and reliable registration records are necessary to preserve ballot integrity and a valid election process. Consequently, we find that the minimal burden of either voting at least once every two years or notifying the supervisor in writing that one's status as a qualified elector has not changed is reasonable. Likewise, we find the Division of Elections' interpretation in advisory opinion 87-16 of that notification process to be reasonable. In so finding, we reject the circuit and district courts' holding that the signing of a petition, in and of itself, is the equivalent of notifying the supervisor of elections that the elector's status has not changed and that the elector should be restored to the voter registration list.
A recall or initiative petition is presented to an elector by an advocate of a particular political view. Such a recall or petition is in no way connected to the status notification process. Because status notification for the purpose of being restored to the voter registration list assists in preserving the integrity of the elective and petition political process, that notification should be presented directly to a neutral election official rather than a biased advocate.
We are not persuaded by the argument that Division of Elections advisory opinion 91-01 is controlling and dictates a contrary result. In that opinion, the Division of Elections held that the act of signing the petition by a valid elector constitutes sufficient notice under section 98.081 that the elector has moved to a new address within the county and, consequently, that the elector is eligible to sign a petition. Unlike the circumstances of this case where the electors had been removed from the permanent registration records, the electors contemplated in advisory opinion 91-01 had not been removed from the permanent registration records and were still valid electors. Thus, advisory opinion 91-01 is distinguishable and not applicable here.[1] Moreover, advisory opinion 87-16 specifically reaches a contrary conclusion to the position the Committee asserts that advisory opinion 91-01 supports. Indeed, although the Division of Elections partially receded from advisory opinion 87-16 in advisory opinion 91-01, the Division specifically left intact the portion of 87-16 at issue.
We acknowledge that election laws should generally be liberally construed in favor of an elector. However, the judgment of officials duly charged with carrying out the election process should be presumed correct *845 if reasonable and not in derogation of the law. Boardman v. Esteva, 323 So.2d 259 (Fla. 1975), cert. denied, 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791 (1976). As noted in Boardman:
"The election process is subject to legislative prescription and constitutional command and is committed to the executive branch of government through duly designated officials all charged with specific duties... . [The] judgments [of those officials] are entitled to be regarded by the courts as presumptively correct and if rational and not clearly outside legal requirements should be upheld rather than substituted by the impression a particular judge or panel of judges might deem more appropriate. It is certainly the intent of the constitution and the legislature that the results of elections are to be efficiently, honestly and promptly ascertained by election officials to whom some latitude of judgment is accorded, and that courts are to overturn such determinations only for compelling reasons when there are clear, substantial departures from essential requirements of law."
323 So.2d at 268-69 n. 5 (quoting from trial court's Final Summary Judgment). We find that similar latitude of judgment should be accorded to election officials in carrying out the process of validating signature petitions.
As indicated, the entire process set forth in section 98.081 as to temporary and permanent removal is to prevent fraud and to assure integrity in the electoral process. In light of the need to maintain the integrity of the verification process by assuring that the elector is still qualified to vote as registered, we find that the express construction of the statute by the Division of Elections in its 87-16 advisory opinion is a reasonable and correct interpretation of the statute. To construe the statute as advocated by the Committee and as held by the trial and district courts would allow a temporarily removed elector to be restored to the electoral rolls by notification to a competitive political advocate rather than to a detached neutral election official. To so hold, in our view, is contrary to the intent and purpose of the statute and would, in fact, constitute a judicial modification of the statute. Further, neither the United States Constitution nor the Florida Constitution requires such an interpretation.
Moreover, we are not convinced that the legislature's continued use of the term "elector" reflects legislative intent to continue considering electors who have been temporarily removed from the registration books as qualified voters. The statute requires an affirmative act of notification by a temporarily removed elector to a neutral election official before the elector can vote. Similarly, some affirmative act of notification directly to the supervisor of elections is required before a temporarily removed elector can sign a petition. The signing of the petition, in and of itself, does not, under this statutory scheme, constitute sufficient notice to the supervisor. Consequently, we find that an elector whose name has been temporarily removed from the registration books is not a qualified voter for the purpose of executing a petition.
In conclusion, we find that Krivanek correctly interpreted the statutory scheme established by the legislature in refusing to validate the signatures of the electors at issue. Given our disposition of this case as to Krivanek's first three issues, we need not reach the question of whether this case must be remanded for a determination of the number of signatures required for a valid petition in this instance.
Accordingly, we quash the district court's decision and find that the writ of mandamus was erroneously issued.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Because the issues addressed in advisory opinion 91-01 are not currently before this Court, we decline to rule, at this time, on the issue of whether the execution of a petition constitutes sufficient notice to a supervisor of elections that an elector's address has changed so as to allow the elector to validly execute the petition.