LaROSE, Judge.
We are called upon to address Florida’s “resign-to-run” law, section 99.012(5), Florida Statutes (2006), in the context of the 2007 Tampa mayoral election. The City of Tampa sued for a declaratory judgment that Marion S. Lewis was required to resign as a captain in the Tampa Police Department (TPD) in order to run for the office of mayor against the incumbent, Pam lorio. The trial court entered a final summary judgment in favor of Mr. Lewis. We conclude that the trial court erroneously ruled that Mr. Lewis did not have to resign. Accordingly, we reverse and remand for further proceedings.

Background

Mr. Lewis, as a TPD captain, was a classified employee under the City’s Civil *1097 Service Law. See Tampa, Fla., Code of Ordinances part B, art. IV, § 4.11(B) (1990). According to Mr. Lewis, he reported to a major who, in turn, reported to an assistant police chief, who, in turn, reported to the police chief, Stephen Hogue. Chief Hogue reported directly to Mayor lorio.
Mr. Lewis decided to run for may- or. In August 2006, he sought an advisory opinion from the Florida Department of State as to whether he had to resign his position in order to seek office. Based upon the information Mr. Lewis provided concerning his chain of command, the Department opined that he did not have to resign.[1] The City had a different view. The City Attorney issued a formal written opinion concluding that Mr. Lewis was required, under section 99.012(5) and Parker v. Baker, 499 So.2d 843 (Fla. 2d DCA 1986), to resign upon qualifying as a mayoral candidate. Thereafter, the City Attorney advised Mr. Lewis that he would be deemed to have resigned upon filing his Oath of Candidate.[2]
Mayor lorio qualified as a candidate for reelection in mid-January 2007. Shortly thereafter, Mr. Lewis qualified, maintaining that he was not required to and, in fact, did not resign. In late January 2007, the City ousted Mr. Lewis from his position and filed its action for declaratory judgment. See § 86.011, Fla. Stat. (2006). The City sought a ruling that section 99.012(5) required Mr. Lewis to resign and that he was deemed to have resigned when he executed the Oath of Candidate. See Baker v. Alderman, 766 F.Supp. 1112, 1115 (M.D.Fla.1991), aff'd sub nom. Baker v. Parker, 979 F.2d 1537 (11th Cir.1992). We are not aware that anyone challenged Mr. Lewis’ qualifications to seek office. See § 99.012(6) (“The name of any person who does not comply with this section may be removed from every ballot on which it appears when ordered by a circuit court upon the petition of an elector or the Department of State.”). Mr. Lewis counterclaimed, seeking a declaratory judgment that he did not have to resign, that he was not deemed to have resigned, and that he could return to his position if he were not elected.[3]
*1098 The City moved for summary judgment. In support of its motion, the City submitted the affidavits of Mayor lorio and Chief Hogue attesting that, pursuant to the City charter, Mayor lorio directly controlled and supervised the TPD, including all appointments to the rank of captain. Mr. Lewis filed opposing depositions and affidavits. The thrust of Mr. Lewis’s argument was that Mayor lorio did not supervise him; she left control of the TPD in the hands of Chief Hogue. Mr. Lewis contended that he did not have to resign his position because Mayor lorio did not supervise him. The trial court denied the City’s motion, finding that Mayor lorio was not Mr. Lewis’ supervisor. Although Mr. Lewis had not moved for summary judgment, the trial court entered a final summary judgment in his favor on the counterclaim.

Analysis

Simply put, we must decide whether Mr. Lewis had to quit his job to run for political office against his boss. Accordingly, we must determine if Mayor lorio was Mr. Lewis’s boss. That determination requires an analysis of statutes and codes. As framed by the record before us, therefore, whether section 99.012(5) required Mr. Lewis to resign is a question of statutory interpretation, making our standard of review de novo. See BellSouth Telecomms., Inc. v. Meeks, 863 So.2d 287, 289 (Fla.2003).
The City’s Civil Service Law addresses employee political activity, including seeking public office:
Any person holding a position with the City of Tampa, Florida, in the classified service or in the unclassified service, except an elected officer, must take a leave of absence, without pay, beginning when said person completes his qualification as a political candidate in any election for:
(1) A City of Tampa office....
Tampa, Fla., Code of Ordinances part B, art. IV, § 4.23(B) (1990) (emphasis added). If this law applied, Mr. Lewis would have been required to take only a leave of absence to run for office. Section 99.012(5), however, imposes a more stringent requirement:
A person who is a subordinate officer, deputy sheriff, or police officer must resign effective upon qualifying pursuant to this chapter if the person is seeking to qualify for a public office that is currently held by an officer who has authority to appoint, employ, promote, or otherwise supervise that person and who has qualified as a candidate for reelection to that office.
(Emphasis added.) Both section 4.23(B) and section 99.012(5) deal with government employees seeking public office. But, section 99.012(5) controls where an employee is seeking office against an incumbent “who has authority to appoint, employ, promote, or otherwise supervise” him. Section 99.012(5) addresses a specific issue that section 4.23(B) does not and, consequently, governs our analysis. See Parker, 499 So.2d at 845.[4]
*1099 As a matter of law, Mayor lorio, at a minimum, had the authority to supervise Mr. Lewis. Thus, section 99.012(5) required him to resign. The City Charter emphasizes that the police chief shall be “under the control and supervision of the mayor” and shall manage the TPD “with the advice and consent of the mayor.” Tampa, Fla., Code of Ordinances part A, art. IV, § 5.01(d) (1990). The Charter, however, grants Mayor lorio more sweeping control and supervisory functions over all City departments:
There shall be a mayor in whom all executive power of the city shall be vested and who shall be the administrative head of the municipal government. Responsibility for the proper administration of the city government shall be solely that of the mayor.... The mayor shall be responsible to the people of the city for the proper administration of the affairs of the city and to that end [her] powers and duties shall include, but shall not be limited to, (1) the administration and enforcement of all laws, ordinances, contracts, and franchises, ... (3) the exercise of direct control and supervision over all departments and divisions of the municipal government, (4) except as herein otherwise expressly provided, the appointment and removal and the fixing of the compensation of all officers and employees of the city, the employment and compensation of whom are not otherwise provided for herein, all such appointments to be made upon merit and fitness alone and in accordance as nearly as possible with civil service requirements, ... (6) the promulgation by executive order of such administrative directives, decisions, and codes and personnel rules and regulations as the mayor shall deem necessary and proper....
Tampa, Fla., Code of Ordinances part A, art. IV, § 4.01 (1990). Based on the broad powers given to the Mayor by the Charter, we cannot accept the proposition that her control and supervision of the TPD was limited to oversight of only Chief Hogue. The Mayor’s direct control and supervision extends over all departments; nothing in the Charter limits that authority to department heads. The affidavits submitted by Mayor lorio and Chief Hogue are consistent with our reading of the Charter.
We are also unpersuaded by Mr. Lewis’s argument that rules promulgated by the City’s Civil Service Board eliminated the Mayor’s authority over classified employees. Even if classified employees must be hired from a Civil Service candidate list[5] and can be discharged only for cause,[6] such limitations on the exercise of authority do not divest the Mayor of all authority to supervise a TPD captain. Indeed, the promulgation of personnel rules and regulations is a power and duty granted the Mayor under the Charter.[7]
Mr. Lewis submitted affidavits and depositions contesting Mayor Iorio’s actual supervision over him. Such evidence does not create a factual issue sufficient to defeat the City’s motion. Essentially, Mr. Lewis argues that these affidavits and de *1100 positions established that Mayor lorio delegated all control and supervisory functions to Chief Hogue. Even if we were to assume that Mayor lorio has a hands-off management style relative to the operation of the TPD, the Charter vests her with the ultimate authority to supervise Mr. Lewis. Accordingly, the trial court erred in denying summary judgment to the City on this point. It follows, necessarily, that Mr. Lewis was not entitled to a final summary judgment.

Conclusion

Section 99.012(5) dictated that Mr. Lewis resign his position as TPD captain in order to run for office against Mayor lorio. The trial court erred in granting a final summary judgment for Mr. Lewis.
We reverse, and remand for further proceedings.
CASANUEVA, J., and CANADY, CHARLES T., Associate Judge, Concur.

. Neither party has addressed the weight, if any, that we should give to the advisory opinion. We note that such opinions are not binding on us. See Gonzalez v. Vogel, 616 So.2d 473, 475 (Fla. 2d DCA 1993). We also observe that the advisory opinion was not based on an analysis of the applicable City Charter provisions discussed in this opinion. See Krivanek v. Take Back Tampa Political Comm., 625 So.2d 840, 844 (Fla.1993) (stating advisory opinion is persuasive authority if reasonable construction of law).

. At the time of submitting his qualifying papers to the Hillsborough County Supervisor of Elections, Mr. Lewis was required to submit an Oath of Candidate:
Before me, an officer authorized to administer oaths, personally appeared (please print name as you wish it to appear on the ballot), to me well known, who, being sworn, says that he or she is a candidate for the office of_; that he or she is a qualified elector of_ County, Florida; that he or she is qualified under the Constitution and the laws of Florida to hold the office to which he or she desires to be nominated or elected; that he or she has taken the oath required by ss. 876.OS-876.10, Florida Statutes; that he or she has qualified for no other public office in the state, the term of which office or any part thereof runs concurrent[ly] with that of the office he or she seeks; and that he or she has resigned from any office from which he or she is required to resign pursuant to s. 99.012, Florida Statutes.
§ 99.021(l)(a), Fla. Stat. (2006) (emphasis added).

. Mr. Lewis actively campaigned for office, albeit unsuccessfully. The mayoral election occurred in early March 2007. The failure of Mr. Lewis’s campaign does not render this appeal moot. The very real issue of Mr. Lewis's possible return to the TPD remains alive. *1098 See Godwin v. State, 593 So.2d 211, 212 (Fla.1992) ("A case is 'moot' when it presents no actual controversy or when the issues have ceased to exist.”).

. To the extent that the City relies on Parker to support its argument that the Oath of Candidate operated as Mr. Lewis’ resignation, we note that Parker did not address that issue. See 499 So.2d 843. We must also observe that Parker, 499 So.2d 843, and Baker, 766 F.Supp. 1112, a federal case involving allegations of wrongful discharge, were decided before the amendment of section 99.012 to include the provision that "[t]he name of any person who does not comply with this section may be removed from every ballot on which it appears when ordered by a circuit court upon the petition of an elector or the Department of *1099 State.” See § 99.012(6), Fla. Stal. (2002 Supp.); Ch. 91-107, § 31, at 899, Laws of Fla. Although section 99.012(6) was in effect at the time Mr. Lewis sought office, its applicability was not raised below. Further, because the issue was not presented to us, we have no occasion to address it here. Whether section 99.012(6) applies to the issue of resignation or to the remedies that might have been available to the City, we leave for further development on remand.

. Tampa, Fla., Code of Ordinances part B, art. IV, § 4.13(D) (1990).

. Id. at § 4.21(A).

. Id. at § 4.12(A)(1).