*714
 
 FARMER, J.
 

 This election dispute comes from the Town of Palm Beach where its incumbent Mayor McDonald was reelected by a single vote. The runner-up, Goldsmith, argues that the Canvassing Board invalidly failed to count some absentee ballots. The trial judge found no basis to quash the Board’s findings. Under the facts of this case, we affirm.
 

 The election was February 3rd. Candidates were Jack McDonald, Gerry Goldsmith and Susan Markin. No one attained a majority. The runoff was two weeks later, February 17th, with two candidates receiving the highest votes, Mayor McDonald and Challenger Goldsmith, the only names on the ballot.
 

 The Palm Beach Supervisor of Elections distributed the absentee ballots for the runoff election. Those ballots identified the supervisor’s post office box located at the main post office for Palm Beach County as an additional place to return absentee ballots. That post office box is on the mainland in West Palm Beach, not on the island of Palm Beach.
 

 When the polls closed the Town’s Canvassing Board reported McDonald received 3 more votes than Goldsmith out of 3,173 cast. As the margin was less than .005 the Board conducted a machine recount.
 
 [1]
 
 That recount did not change the margin; hence a manual recount ensued.
 
 [2]
 
 Thirteen absentee ballots in the manual recount were held invalid because they were not timely returned. The manual recount showed McDonald winning by a single vote: 1,590 to 1,589.
 

 Goldsmith filed an election contest.
 
 [3]
 
 He alleged that 9 of the 13 absentee ballots were improperly excluded as untimely. At trial, he sought to prove that 3 of these absentee ballots had been placed in the U.S. Mail in Palm Beach on February 14th and should have been received in the West Palm Beach post office box by 7:00 p.m. on February 17th. Employees from the supervisor’s office twice surveyed the box on February 17th, once at 10:00 a.m. and then at 5:00 p.m. Some ballots were found in the first survey; none in the last.
 

 Goldsmith contended that at least 3 of the ballots found in the post office box the next day might have been placed there on February 17th by postal workers between 5:00 and 7:00 p.m. But USPS officials stated that mail reaching the main facility on February 17th would not be placed in the box until the next day. At the end of the bench trial, the court found no evidence supporting Goldsmith’s claim, that it was based on speculation.
 

 Florida law allows qualified voters to request an absentee ballot from the Supervisor of Elections.
 
 [4]
 
 Section 101.6103(2) explicitly states: “The elector shall mail, deliver, or have delivered the marked ballot so
 
 that it reaches the supervisor of elections no later than 7 p.m. on the day of the election.”
 
 [e.s.] Absentee ballots also have this instruction to voters:
 

 “VERY IMPORTANT. In order to ensure that your absentee ballot will be counted, it should be completed and returned as soon as possible so that it can reach the supervisor of elections of the county in which your precinct is located
 
 no later than 7 p.m. on the day of the
 
 election.”
 
 [5]
 
 [e.s.]
 

 
 *715
 
 No one suggests this warning was not furnished to those whose absentee ballots were untimely.
 

 Of course, the right to vote is fundamental in our system of democratic government.
 
 Boardman v. Esteva,
 
 323 So.2d 259, 263 (Fla.1975). There is some sentiment that unlike the right to vote in person, the ability to “vote by absentee ballot is a privilege.”
 
 In re November 4, 1997 Election for the City of Miami,
 
 707 So.2d 1170, 1173 (Fla. 3d DCA 1998);
 
 Anderson v. Canvassing and Election Bd. of Gadsden County,
 
 399 So.2d 1021, 1023 (Fla. 1st DCA 1981);
 
 see also McDonald v. Miller,
 
 90 So.2d 124 (Fla.1956) (in view of fact that absentee voting was unknown to common law, statutes for absentee voting should be cautiously and specifically followed). But
 
 Boardman
 
 held:
 

 “realizing as we do that strict compliance has been required by this Court in other cases, we now recede from that rule and hereby reaffirm the rule ... that
 
 substantial compliance
 
 with the absentee voting laws is all that is required to give legality to the ballot.” [e.s.]
 

 323 So.2d at 264.
 

 Absentee voting is only one way of exercising the right to vote. For all ways of voting, however, the statutes require eligible voters to comply with specific conditions before their vote may have effect. Voters must have attained proper age; establish residence; duly register before the registration deadline; present oneself on election day at the proper polling place before the polls close; prove identity; indicate one’s choices in the approved manner. For absentee voters, the statutes substitute the condition of returning the completed ballot before the polls close.
 

 Goldsmith posits that
 
 substantial compliance
 
 is met by placing the returned absentee ballot in the U.S. Mail sometime before election day, just early enough that the USPS should be able to get it into the supervisor’s box by the deadline. He argues that mail reaching the main facility (where the supervisor’s box is located) any time on election day should be deemed timely received by the supervisor and be counted.
 

 Yet the statute for absentee voting explicitly places the burden on
 
 the voter
 
 (not the USPS) to deliver the ballot no later than 7:00 p.m. on election day. The voter is given the choice of personally conveying the ballot or relying on others (such as the USPS) to do so. The statutes omit any implication that ballots would or should be deemed received by the supervisor simply because before election day they were somewhere in the hands of the USPS.
 

 We do not read Goldsmith’s contention of mere placement in the U.S. Mail system as compliance in any
 
 sense
 
 — substantial or otherwise — with the actual statutory return requirement for absentee voters: “The elector
 
 shall mail ... ballot so that it reaches the supervisor
 
 of elections
 
 no later than 7 p.m. on the day of the elec
 
 tion.” [e.s.] It is the
 
 voter
 
 who must get the returned ballot into the supervisor’s hands before polls close, not the USPS. The ballot explicitly warns voters of that requirement. The very statutory warning itself makes clear the Legislature understood the vagaries of third party delivery yet made the voter responsible to get the ballot to the polls on time. Just as the voter who votes in person must show up at the polls on time.
 

 The delivery deadline is not subject to interpretation by dissecting conceivable applications and variations on Boardman’s descriptive term
 
 substantial.
 
 323 So.2d at 264. The statute’s condition for counting the ballot is plain and unqualified: it must reach the supervisor
 
 before
 
 the voting period lapses. It is not a condition capable of
 
 *716
 
 being met closely afterwards.
 
 [6]
 
 If it arrives before closing, it may be counted; if it doesn’t, it will not be counted. The statutes and the obligation they impose on the absentee voter could not be more obviously beyond such cavil. Late but close is not compliance of any kind.
 

 The judgment of officials duly charged with carrying out the election process should be presumed correct if reasonable and not in derogation of the law.
 
 Krivanek v. Take Back Tampa Political Comm., 625
 
 So.2d 840, 844-45 (Fla.1993). Indeed as the court explained in
 
 Boardman:
 

 “The election process is subject to legislative prescription and constitutional command and is committed to the executive branch of government through duly designated officials all charged with specific duties.... [The] judgments [of those officials] are entitled to be regarded by the courts as presumptively correct and if rational and not clearly outside legal requirements should be upheld rather than substituted by the impression a particular judge or panel of judges might deem more appropriate. It is certainly the intent of the constitution and the legislature that the results of elections are to be efficiently, honestly and promptly ascertained by election officials to whom some latitude of judgment is accorded, and that courts are to overturn such determinations only for compelling reasons when there are clear, substantial departures from essential requirements of law.”
 

 323 So.2d at 268-69, n. 5.
 

 In this case, the trial court found:
 

 “The evidence by any standard of proof (a preponderance of the evidence, clear and convincing, etc.) demonstrated that there were no absentee ballots placed in the Supervisor’s box between approximately 5:00 p.m. February 17th (when last checked by the Supervisor’s office) and 7:00 p.m. February 17, 2009.”
 

 The trial court held the procedures employed by the supervisor complied with the statutes. That decision is amply supported by the law and the record on appeal.
 

 Affirmed.
 

 GROSS, C.J., and CIKLIN, J„ concur.
 

 [1]
 

 .
 
 See
 
 § 102.141(7), Fla. Stat. (2008).
 

 [2]
 

 .
 
 See
 
 § 102.166, Fla. Stat. (2008).
 

 [3]
 

 .
 
 See
 
 § 102.168, Fla. Stat. (2008).
 

 [4]
 

 .
 
 See
 
 § 101.62, Fla. Stat. (2008).
 

 [5]
 

 .
 
 See
 
 § 101.65, Fla. Stat. (2008) (¶ 1).
 

 [6]
 

 . How close would be enough to be substantial?