386 So.2d 561 (1980)
STATE of Florida ex rel. CITIZENS PROPOSITION FOR TAX RELIEF, Edward E. Havill, and Alphonso Bruno, Petitioners,
v.
George FIRESTONE, Secretary of State of the State of Florida, Respondent.
No. 59466.
Supreme Court of Florida.
July 25, 1980.
J. Elliott Messer, John H. French, Jr. and James C. Hauser of Thompson, Messer, Rhodes, Vickers & Hart, Tallahassee, for petitioners.
*562 Jim Smith, Atty. Gen. and Gerald B. Curington, Asst. Atty. Gen., Tallahassee, for respondent.
OVERTON, Justice.
By an original proceeding in mandamus petitioners seek relief from the provisions of section 100.371, Florida Statutes (1979), and Rule 1C-7.091, Florida Administrative Code. These provisions require any person desiring to place a constitutional amendment on the ballot by initiative to submit the required signatures of electors to the appropriate supervisors of elections no later than 122 days prior to a general election, rather than ninety days allegedly required in article XI, section 5, Florida Constitution. The asserted effect of the rule and the statute is to shorten the time available for obtaining the necessary signatures before the subject election.
The primary issue is the legal validity of the statute and rule, which mandate the submission of signatures for an initiative petition to place a constitutional amendment on the ballot thirty-two days prior to the ninetieth day prior to the general election, for the avowed purpose of verifying these signatures. We exercise our discretion *563 to accept jurisdiction upon this constitutional question which requires no evidentiary findings or hearing. Art. V, § 3(b)(8), Fla. Const. We find the implementing rule unconstitutional to the extent it changes the date for filing an initiative petition.
The authority to amend the Florida Constitution by an initiative petition is contained in article XI, section 3, which provides:
Initiative.  The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the secretary of state a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.
It is part of a constitutional design which prescribes four distinct and separate methods to amend the constitution.[1]
In accordance with section 5 of article XI, a constitutional proposal by initiative petition as well as by the legislature or a constitutional convention "shall be submitted to the electors at the next general election held more than ninety days after" such a proposal "is filed with the secretary of state." For clarity of discussion, article XI, section 5, is set forth in its entirety as follows:
SECTION 5. Amendment or revision election. 
(a) A proposed amendment to or revision of this constitution, or any part of it, shall be submitted to the electors at the next general election held more than ninety days after the joint resolution, initiative petition or report of revision commission or constitutional convention proposing it is filed with the secretary of state, unless, pursuant to law enacted by the affirmative vote of three-fourths of the membership of each house of the legislature and limited to a single amendment or revision, it is submitted at an earlier special election held more than ninety days after such filing.
(b) Once in the tenth week, and once in the sixth week immediately preceding the week in which the election is held, the proposed amendment or revision, with notice of the date of election at which it will be submitted to the electors, shall be published in one newspaper of general circulation in each county in which a newspaper is published.
(c) If the proposed amendment or revision is approved by vote of the electors, it shall be effective as an amendment to or revision of the constitution of the state on the first Tuesday after the first Monday in January following the election, or on such other date as may be specified in the amendment or revision. [Emphasis added.]
In 1979 the legislature established procedures for placing constitutional amendments on the ballot by initiative petition, through the enactment of section 100.371, Florida Statutes (1979), which provides:
Initiatives; procedure for placement on ballot. 
(1) Constitutional amendments proposed by initiative shall be placed on the ballot for the general election occurring in excess of 90 days from the certification of ballot position by the Secretary of State.
(2) Such certification shall be issued when the Secretary of State has received verification certificates from the supervisors *564 of elections indicating that the requisite number and distribution of signatures of electors have been submitted to and verified by the supervisors.
(3) The sponsor of an initiative amendment shall, prior to obtaining any signatures, register as a political committee pursuant to s. 106.03 and submit the text of the proposed amendment to the Secretary of State, with the form on which the signatures shall be affixed, and shall obtain the approval of the Secretary of State of such form. The Secretary of State shall promulgate rules pursuant to s. 120.54 prescribing the style and requirements of such form.
(4) The sponsor shall submit signed forms to the appropriate supervisor of elections for verification as to the number of registered electors whose signatures appear thereon. The supervisor shall promptly verify the signatures upon payment of the fee required by s. 99.097. Upon completion of verification, the supervisor shall execute a certificate indicating the total number of signatures checked, the number verified as being of registered electors, and the distribution by congressional district. This certificate shall be immediately transmitted to the Secretary of State. The supervisor shall retain the signature forms for at least 1 year.
(5) The Secretary of State shall determine from the verification certificates received from supervisors of elections the total number of verified signatures and distribution of such signatures by congressional districts. Upon a determination that the requisite number and distribution of signatures have been obtained, the secretary shall issue a certificate of ballot position for that proposed amendment and shall assign a designating number pursuant to s. 101.161. A petition shall be deemed to be filed with the Secretary of State upon the date of the receipt by the secretary of a certificate or certificates from supervisors of elections indicating the petition has been signed by the constitutionally required number of electors.

(6) The Department of State shall have the authority to promulgate rules in accordance with s. 120.54 to carry out the provisions of this section. [Emphasis added.]
We note that section (1) requires certification of the ballot position by the secretary of state "in excess of ninety days" from the general election. Further, in accordance with subsection (5), "certification" cannot be accomplished without verification of the electors who are signatories on the petition by the supervisors of elections in the identified congressional districts. It is uncontroverted that the legislature has directed that an initiative petition may not be filed until the verification certificates have been received from the various supervisors of elections by the secretary of state.
This statute was implemented by the department of state in its promulgation of rule 1C-7.091, Florida Administrative Code, which provides:
Constitutional Amendment Initiative Petition. Submission Deadline; Checking Electors' Signatures.
(1) Initiative petitions containing signatures proposing constitutional amendments to the Florida Constitution shall be submitted to the Supervisor of Elections in the county in which they were circulated to be checked.
(2) Petitions submitted pursuant to subsection (1) shall be provided to the appropriate Supervisors of Elections no later than 5 p.m. of the 122nd day prior to the General Election in which the constitutional amendment is to be placed upon the ballot.

(3) Upon receipt of initiative petitions the Supervisor shall check the signatures on each petition to insure that each person signing said petition is a registered elector in that county.
(4) Upon completion of the verification as set forth in subsection 1C-7.091(3), a certificate shall be submitted to the Division of Elections of the Department of State by the Supervisor of Elections certifying the total number of signatures *565 checked, the number verified as registered electors and the distribution by congressional district. The certificate shall be submitted no later than 5 p.m. of the 92nd day preceding the General Election. Any certificate received later than that time will not be eligible to be counted toward the required number of elector's [sic] signatures for any congressional district or the State as a whole. The Department will provide appropriate forms to the Supervisor of Elections to be used for transmission of the required information. In conjunction with the certificate submitted, each Supervisor of Elections shall submit a copy of one petition showing the text of the constitutional amendment to which the certified signatures relate.
(5) Upon receipt of a certificate from the Supervisor of Elections, the Department shall compile the total number of signatures verified as being registered electors to determine whether the requisite number of signatures has been obtained with respect to each constitutional amendment, by each political committee, for each congressional district and the State as a whole. Upon completion of the compilation, a certification of ballot position shall be issued by the Secretary of State to an appropriate political committee which has obtained the constitutionally required number of signatures. Any political committee which has not obtained the require [sic] number of signatures will be so notified.
(6) Any initiative petitions submitted by a political committee which do not obtain the requisite number of signatures may not be utilized in any future initiative petition effort. [Emphasis added.]
This rule requires all initiative petitions to be "submitted" 122 days prior to the general election, and the department of state asserts that the rule was necessary to comply with the legislative mandate set forth in section 100.371, Florida Statutes (1979). The rule prohibits the receipt of any initiative petition or additional electors' signatures by the supervisors of elections after the 122nd day preceding the general election.
Critical dates under the 1980 election process as established by the identified constitutional provisions, statutes, and rules are:
(1) July 7, 1980, 122nd day preceding the general election;
(2) August 4, 1980, deadline for supervisors to submit verified petitions to secretary of state;
(3) August 6, 1980, ninetieth day preceding general election;
(4) August 26 commences the tenth week;
(5) September 23 commences the sixth week;
(6) November 4, 1980, general election.
The petitioner committee alleges that prior to July 7, 1980, it had submitted petitions to supervisors of elections but that the "petitions will fail by a narrow margin" to obtain the necessary signatures to place the proposed constitutional amendment on the ballot. Petitioner Bruno, in his individual capacity, alleges that the supervisor of elections in Palm Beach County refused to accept on July 10, 1980, a petition containing his signature as an elector of that county. The petitioners maintain that the various supervisors of elections must be allowed to accept signatures for verification up to the last possible moment that verification and certification are possible prior to the August 6 deadline, reasoning that the July 7 date set by the rule constitutes a deprivation of a petitioner's constitutional initiative petition rights as set forth in sections 3 and 5 of article XI.
In his response on the merits, the secretary of state contends that the statute and rule procedure is necessary to ensure the orderly and complete verification of the 255,653 signatures which are needed to support all initiative petitions in 1980 and to ensure that the initiative petition be given ballot access in the time mandated by the constitution. The secretary of state further asserts the acceptance of petitions up until the last day would create chaos at the verification stage and contends the rule provides *566 a reasonable means to put an initiative petition on the ballot, since the thirty-day verification period allows supervisors sufficient time to conduct an orderly and accurate check of the signatures and resolve any challenges that might arise. The secretary of state acknowledges that the initiative petition method to amend the constitution is a fundamental right and any rule or statute which regulates this initiative process must not unduly burden the petitioners' initiative access, but argues that the subject rule and statute are reasonable means to protect the integrity of the ballot process and provide sufficient time for an accurate and orderly verification of the signatures. The secretary of state concludes that a reasonably diligent person can comply with the rule and the statute.
The initiative petition provision of article XI provides in part that "The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people" and directs that "It may be invoked by filing with the secretary of state a petition containing a copy of the proposed revision or amendment" signed by the requisite number of electors.
The questions we must decide are (1) whether "filing" as used in this constitutional provision may be construed and interpreted by the legislature to require as a prerequisite to acceptance for filing the verification of the electors' signatures to ensure ballot integrity, and (2) whether the secretary of state has the authority under this statute to require initiative petitions to be filed 122 days preceding the next general election. We answer the first question in the affirmative and the second question in the negative.
The constitution by its express terms provides that an initiative petition should be "filed" with the secretary of state and that the proposal "shall be submitted to the electors at the next general election held more than ninety days after the ... initiative petition ... is filed with the secretary of state." Nothing is said in the constitution concerning verification. The constitution further mandates that "once in the tenth week and once in the sixth week immediately preceding the week in which the election is held" the proposed amendment must be published in one newspaper in each county. The time constraints are set forth expressly in the constitution.
This is a self-executing constitutional provision. It clearly establishes a right to propose by initiative petition a constitutional amendment which may be implemented without the aid of any legislative enactment. Gray v. Bryant, 125 So.2d 846 (Fla. 1960). In this regard, this initiative process has already produced a constitutional amendment which was adopted without the benefit of the subject statute or rule. Art. II, § 8 (Ethics in Government).
The four methods of amending our constitution must be considered as a whole to effect their overall purpose. Smathers v. Smith, 338 So.2d 825 (Fla. 1976). They are delicately balanced to reflect the power of the people to propose amendments through the initiative process and the power of the legislature to propose amendments by its legislative action without executive check. Only these two methods can produce constitutional amendment proposals at each general election. The power to propose amendments to the electorate by the constitution revision commission or a constitutional convention procedure is substantially restricted by their ability to exist. In considering any legislative act or administrative rule which concerns the initiative amending process, we must be careful that the legislative statute or implementing rule is necessary for ballot integrity since any restriction on the initiative process would strengthen the authority and power of the legislature and weaken the power of the initiative process. The delicate symmetric balance of this constitutional scheme must be maintained, and any legislative act regulating the process should be allowed only when necessary to ensure ballot *567 integrity. We do, however, recognize that the legislature, in its legislative capacity, and the secretary of state, in his executive capacity, have the duty and obligation to ensure ballot integrity and a valid election process. Ballot integrity is necessary to ensure the effectiveness of the constitutionally provided initiative process.
We conclude that verification is an element of ballot integrity and a task which the legislature may require to be accomplished as a prerequisite to filing an initiative constitutional proposal with the secretary of state.
In implementing section 100.371, Florida Statutes (1979), the department of state has determined by its rule 1C-7.091 that no initiative petition can be received subsequent to 122 days preceding the next general election. Although we agree that verification is essential to ballot integrity and the legislature and the secretary may prescribe reasonable regulations to ensure an expeditious and proper verification process, we reject the 122-day cutoff date established by the secretary of state in this rule. We find no constitutional or statutory authority for this rule limitation upon the initiative process. It is our view that the secretary of state has no authority to adopt by rule different time periods for receipt of an initiative petition for filing.
Under the constitutionally established initiative procedure as implemented by the subject statute, it is properly the responsibility of the proposer not only to obtain the necessary signatures of the electors but also to cause them to be verified prior to filing with the secretary of state. We expect both the proposer and the supervisors of elections in the various counties to act reasonably in the verification process. The proposer must afford the supervisors reasonable time to verify the signatures, and the supervisors must not unduly delay the verification process. From the rule adopted by the secretary of state, it is apparent that thirty days is the outer limit of time reasonably necessary to verify electors' signatures by supervisors of elections. If the proposer has a sufficient number of verified signatures on an initiative petition ninety-one days prior to the general election, the secretary of state must, under the constitution, accept the petition for filing since it has been submitted to him for "filing" more than ninety days from the date of the next general election.
We caution that those who seek to place an initiative petition on the ballot are best advised to submit petitions for verifications sufficiently in advance of the last date for filing to afford an adequate time for proper verification of electors. No correction may be allowed less than ninety-one days prior to the general election, and, further, neither verification by the supervisors nor certification by the secretary of state immunizes the proposal from a judicial action claiming the necessary constitutional requirements have not properly been met.
For the reasons expressed, we find that rule 1C-7.091, Florida Administrative Code, is unconstitutional to the extent it prohibits the filing of a verified initiative petition through the ninety-first day preceding the next general election.
The petition for writ of mandamus is granted, but, because we believe the secretary of state will comply with this decision, we withhold our writ at this time. Due to the exigencies of the situation, rehearing will be dispensed with.
It is so ordered.
ADKINS, BOYD and ALDERMAN, JJ., concur.
SUNDBERG, C.J., dissents with an opinion.
SUNDBERG, Chief Justice, dissenting.
At the risk of appearing antipopulist I must respectfully dissent from the majority opinion. I do so because I believe there is a fatal flaw in the majority's basic premise. The premise is that article XI, section 5 of the Florida Constitution establishes a date upon which a proposed amendment to or revision of the constitution is to be filed in order to be placed on the ballot at a general election. Hence they conclude that initiative petitioners under article XI, section 3, have the inalienable right to file petition signatures with the secretary of state on any date up to ninety-one days preceding a general election.
*568 The majority construes the language of article XI, section 5, as if it read:
A proposed amendment to or revision of this constitution, or any part of it, may be submitted by its proposers at any time up to 90 days prior to the general election at which it is submitted to the electors.
A plain reading of article XI, section 5, however, refutes this premise. In pertinent part it reads:
A proposed amendment to or revision of this constitution, or any part of it, shall be submitted to the electors at the next general election held more than 90 days after the ... initiative petition... proposing it is filed with the secretary of state... .
(Emphasis supplied.) Rather than guaranteeing proposers of a constitutional amendment or revision an irreducible date by which they are entitled to file a proposal, the above provision guarantees only that no such proposal will be entitled to consideration by the people unless it is filed in proper form with the secretary of state more than ninety days before the election at which it will be voted upon.
To me it is clear that the thrust of article XI, section 5 is to protect the integrity of the ballot process. The state has a legitimate interest in protecting the integrity of its political process by regulating the number and kind of candidates as well as the issues on the election ballot. Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972); Jenness v. Fortson, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). Access to the ballot is an important constitutional right. It is no less laudable an objective to ensure an orderly ballot process which eliminates confusion as to the issues which may be properly presented and the clarity of those properly initiated issues. I submit that the only reasonable interpretation of article XI, section 5 is that the framers and adopters of that section sought to ensure that propositions would be adequately framed and certain in advance of an election so that there would be ample opportunity for the electors to be informed as to their content and merit. Ballot position was to be determined and certain on a date more than ninety days preceding the election at which the people would be called upon to exercise a judgment.
Furthermore, the history leading to the adoption of the 1968 Constitution augurs against the majority's interpretation. The predecessor Constitution of 1885 had been repeatedly and persistently amended by inclusion of matters which did not rise to fundamental constitutional dignity. A major objective of the original Constitutional Revision Commission was to impose a more orderly and stringent process for amendment of the 1968 Constitution to curb the excesses which beset the 1885 Constitution. Article XI reflects this deliberative scheme. Section 5 in particular reflects the philosophy that ample opportunity for study and reflection by the electorate is to be afforded before our fundamental document is "tinkered with." Hence, I cannot but conclude that section 5 is aimed at ballot integrity as opposed to ballot access. That is not to say, of course, that ballot access is unimportant. It is a fundamental right also, but it is to be measured by a rule of reasonableness. Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).
Since article XI, section 5 establishes no specific date in advance of an election by which a proposed amendment or revision must be filed with the secretary of state (more than ninety days prior to a general election is not a specific date), I perceive it to be the function of the secretary of state to establish that date consistent with orderly ballot preparation, provided the date established is not unreasonable. So too does the legislature have a field of operation in prescribing reasonable procedures to implement the ballot process. The legislature has acted through enactment of section 100.371, Florida Statutes (1979).
Pursuant to section 100.371(6), the Department of State had promulgated rule 1C-7.091, Florida Administrative Code. Without benefit of any evidentiary hearing the majority has evidently concluded that the rule is unreasonable. The view is taken *569 that the secretary of state has no constitutional authority to "extend" the ninety-one-day period. This ignores, of course, the fact that the constitution does not speak in terms of ninety days or ninety-one days or any other specific date. The totally unsupported date for filing established by the majority is purely and simply the result of judicial fiat. Without the filing date judicially constructed today, there can be no assertion that the secretary of state has "extended" any filing date.
To sum up, I would hold the following: (1) article XI, section 5, imposes no specific date before which initiative petitions must be filed with the secretary of state. In fact, it only designates the general election at which an initiative amendment may be considered on the ballot  one which occurs more than ninety days after such proposed amendment is properly filed; (2) the legislature by statute and the Department of State by rule promulgated pursuant to that statute may establish reasonable procedures for verification of compliance with the constitutional criteria for placement of an initiative amendment on the ballot for a general election, including the date by which petition signatures must be submitted to place a proposed amendment on the ballot for each general election; (3) the question of the reasonableness of the procedures established is a proper subject for judicial scrutiny to ensure ballot access. Since the reasonableness of rule 1C-7.091, Florida Administrative Code, can only be determined in an evidentiary proceeding, mandamus is an improper remedy. Brown v. Firestone, 382 So.2d 654 (Fla. 1980).
Accordingly, I would deny the petition for writ of mandamus.
NOTES
[1] Section 1 of article XI provides the method for the legislature to submit proposals to the electorate without any executive branch involvement or check. Section 2 of article XI provides for a constitution revision commission every twenty years to submit proposals to the electorate. Section 4 of article XI prescribes a method to call for a constitutional convention, a means to elect its members, and the subsequent submission of its work product to the electorate for adoption.