980 So.2d 547 (2008)
FLORIDA HOMETOWN DEMOCRACY, INC. PAC and Lesley G. Blackner, Appellants,
v.
Kurt S. BROWNING, in his capacity as the Secretary of State and head of the Department of State; the State of Florida, Department of State, Division of Elections; and Save Our Constitution, Inc., Appellees.
No. 1D07-6024.
District Court of Appeal of Florida, First District.
April 23, 2008.
*548 Mark Herron and Albert T. Gimbel of Messer, Caparello & Self, Tallahassee, and Ross Stafford Burnaman, Tallahassee, for Appellants.
Bill McCollum, Attorney General, Scott D. Makar, Solicitor General, Craig D. Feiser and Courtney Brewer, Deputy Solicitors General, and Blaine H. Winship, Assistant Attorney General, Tallahassee, and Lynn C. Hearn, General Counsel, Florida Department of State, Tallahassee, for Appellees Kurt S. Browning, and the State of Florida, Department of State, Division of Elections.
John French, Tallahassee, for Appellee Save Our Constitution, Inc.
ALLEN, J.
The appellants challenge an order by which the trial court entered final summary judgment for the appellees and denied the appellants' motion for summary judgment in the appellants' action for declaratory judgment and injunctive relief. The appellants contend that section 25 of chapter 2007-30, Laws of Florida, and emergency implementing rules 1SER07-1 and 1SER07-2 of the Florida Department of State, all asserting regulatory authority over the citizen initiative process authorized by article XI, section 3 of the Florida Constitution, violate the citizen initiative provisions of the state constitution. Because the challenged legislation and rules are not necessary to ensure ballot integrity, they violate the citizen initiative provisions and are thus unconstitutional.
Article XI, section 3 of the Florida Constitution provides:
Initiative.  The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the custodian of state records a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.
The constitution provides four methods through which constitutional amendments might be proposed, but only two of these, amendments proposed by the legislature pursuant to article XI, section 1, and amendments proposed by citizen initiative pursuant to article XI, section 3, may produce constitutional amendment proposals at each general election. These two methods for proposing constitutional amendments "are delicately balanced to reflect the power of the people to propose amendments through the initiative process and the power of the legislature to propose amendments by its legislative action without executive check." State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561, 566 (Fla.1980). This important balance is threatened when legislative or executive action unnecessarily intrudes into the initiative power specifically reserved to the people of Florida. Id.
*549 Although the citizen initiative provisions of the constitution are self-executing in that they clearly establish the right of the people to propose constitutional amendments through a petition procedure that may be fully implemented without the aid of any legislative enactment, the Florida Supreme Court has recognized that the legislature and the secretary of state nevertheless have the right and the duty to "ensure ballot integrity" in the initiative process. Id. But legislative enactments and administrative rules regulating the citizen initiative process are constitutionally permissible "only when necessary to ensure ballot integrity." Id. The Florida Supreme Court has not provided a definition for the term "ballot integrity," but two of the Court's decisions provide guidance as to the meaning of "ballot integrity."
In Firestone, the Court held that portions of a legislative enactment and implementing rules of the secretary of state prescribing citizen initiative signature verification procedures were valid because verification that the constitutionally required number of qualified electors has signed an initiative petition is "essential to ballot integrity." 386 So.2d at 567. The controlling principle in Firestone is that legislative enactments and administrative rules regulating the citizen initiative process ensure ballot integrity when they serve to confirm compliance with constitutionally-specified requirements for submission of proposed amendments through citizen initiative.
In Smith v. Coalition to Reduce Class Size, 827 So.2d 959 (Fla.2002), the Court invalidated a legislative enactment that would have required the recitation of a separate "analysis and fiscal impact statement" following the summary of the proposed amendment on the general election ballot for any constitutional amendment proposed through the initiative process. In doing so, the Court made the following observations:
Article XI does not contain any language, either explicit or implicit, regarding the fiscal impact of initiatives. Article XI, section 3 grants Floridians the power to amend the constitution by initiative. The requirements for exercising this power are set forth in article XI, section 3. If these requirements are met, then the sponsor of an initiative has the right to place the initiative on the ballot. However, with the passage of chapter 2002-390, an initiative's appearance on the ballot will be substantially altered, due to the addition of the fiscal impact statement. The effect of chapter 2002-390 would be to weaken the power of the initiative process. Hence, we are unable to conclude that chapter 2002-390 is necessary to ensure ballot integrity.
The appellants and the House of Representatives, as amicus, argue that the fiscal impact statement is necessary for the electorate to be informed. While we do not in any way diminish the importance of an informed electorate, we find that the fiscal impact statement does not go to the ballot integrity which is a prerequisite for any legislative involvement in the initiative process.
. . .
[T]he proper way to impose a fiscal impact requirement would be to amend article XI. . . .
827 So.2d at 963-64 (internal citations and quotations omitted). The controlling principle in Smith is that legislative enactments and administrative rules regulating the citizen initiative process ensure ballot integrity when they specify requirements that are necessary for the orderly presentation of initiative-generated constitutional amendment proposals on general election ballots, but legislative enactments and administrative rules burdening the initiative process with requirements that are neither *550 prescribed by the constitution nor necessary for the orderly presentation of these proposals are unconstitutional.
The legislation and implementing rules at issue here assert regulatory authority over the citizen initiative process by interjecting the concept of petition signature revocation. Among other things, they prescribe procedures through which an elector's signature on a citizen initiative petition form may be revoked, they provide that revocation forms shall be furnished to the public at all offices of county supervisors of elections, they provide that an elector who has revoked his signature on a petition form may not thereafter sign a new petition in support of the same initiative, and they provide that signatures that have been revoked will not be counted when the secretary of state determines whether the requisite number of verified signatures has been provided for submission of a proposed constitutional amendment to the electorate.
In light of the controlling principles in Firestone and Smith, the legislation and implementing rules here are unconstitutional because they do not ensure ballot integrity. They do not serve to confirm compliance with constitutionally-specified requirements for submission of proposed amendments through the initiative process, as did the legislation and rules involved in Firestone. Indeed, signature revocation is not even referenced in the citizen initiative provisions of the constitution. And they are not necessary for the orderly presentation of initiative-generated constitutional amendment proposals on general election ballots. Instead, they serve to burden the initiative process with requirements that are not prescribed by the constitution, as did the fiscal impact statement mandated by the legislation successfully challenged in Smith.
In support of the challenged legislation and rules, the appellees espouse the virtues and benefits of signature revocation procedures. When advocates for the legislation involved in Smith made similar arguments, the Florida Supreme Court responded by observing that modification of the initiative process through measures which are not necessary to ensure ballot integrity must be accomplished through amendment of article XI of the constitution. The modification that would have been afforded by the legislation held unconstitutional in Smith later became a part of the state constitution through the constitutional amendment process. See Art. XI, § 5(c), Fla. Const. The constitutional amendment process is likewise the proper method for any imposition of the modifications proposed by the legislation and rules involved in this case.
The appealed order is reversed and this case is remanded with directions that judgment be entered for the appellants.
KAHN, and WEBSTER, JJ., concur.