PARIENTE, J.,
specially concurring.
I concur in the majority’s decision to affirm the First District’s well-reasoned opinion in Florida Hometown Democracy, Inc. v. Browning, 980 So.2d 547 (Fla. 1st DCA 2008), holding unconstitutional the signature-revocation provisions of section 100.37, Florida Statutes (2007). The citizens have a specific state constitutional right to propose amendments through the initiative process as set forth in article XI, section 3. See art. XI, § 3, Fla. Const. (“The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people....”). As the majority explains, our precedent is clear that the methods of amending our constitution
are delicately balanced to reflect the power of the people to propose amendments through the initiative process and the power of the legislature to propose amendments by its legislative action without executive check. Only these two methods can produce constitutional amendment proposals at each general election.... In considering any legislative act or administrative rule which *1074 concerns the initiative amending process, we must be careful that the legislative statute or implementing mle is necessary for ballot integrity since any restriction on the initiative process would strengthen the authority and power of the legislature and weaken the power of the initiative process. The delicate symmetric balance of this constitutional scheme must be maintained, and any legislative act regulating the process should be allowed only when necessary to ensure ballot integrity.
State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561, 566 (Fla.1980) (emphasis supplied). Thus, the Legislature does have the authority to pass legislation regarding the petition process but that authority is limited to legislation or i’egulations necessary to ensure ballot integrity. In addition, when necessary to ensure ballot integrity or a valid election process, any statute or regulation must be administered by neutral election officials. Whether a proposed constitutional amendment should be included in the Constitution is of course a subject for proponents and opponents to debate vigorously after the amendment is placed on the ballot.[20]
The signature-revocation legislation we are required to hold unconstitutional has almost nothing to do with ensuring ballot integrity. Rather, whether intended by the Legislature or not, the statutory scheme gives those opposing the initiative an unfair advantage before the amendment is even placed on the ballot by allowing those opponents to persuade voters who have already signed the petition to change their minds. Once a signature is revoked based on the opponents’ campaign, there is no opportunity for the voter to re-sign the petition.
The statute, as drafted, is fraught with the potential for abuse of the signature-gathering process before the initiative is submitted to the voters. It may of course be true, as argued by appellees, that there are “virtues and benefits of signature revocation procedures.” Fla. Hometown Democracy, 980 So.2d at 550. If that is the case, then the remedy lies in proposing a constitutional amendment to the citizen initiative process. However, as the First District concluded based on our controlling precedent, the signature-revocation legislation in this case is “not necessary for the orderly presentation of initiative-generated constitutional amendment proposals on general election ballots. Instead, [it] serve[sj to burden the initiative process with requirements that are not prescribed by the constitution....” Id. I agree and, for all of these reasons, concur in the decision to find the signature-revocation legislation to be an unconstitutional intrusion on article XI, section 3.
QUINCE, C.J, and LABARGA, J., concur.

. This Court’s authority regarding constitutional amendments proposed by our citizens is likewise very narrowly limited to whether the amendment meets the single subject and ballot summary requirements. Whether this Court agrees with the “merits or wisdom” of any particular proposal is irrelevant to whether the proposal may be placed on the ballot. See, e.g., Advisory Op. to the Ati’y Gen. re Limiling Cruel and Inhumane Confinement of Pigs During Pregnancy, 815 So.2d 597, 600 (Fla.2002) (Pariente, J., concurring). While I have questioned the proliferation of constitutional amendments in the past, I have also recognized that the Court has no authority to act in this arena to circumscribe the right of the citizens to amend their Constitution. See id.