POLSTON, J.,
dissenting.
The plurality holds that the statutory provisions providing electors the opportunity to revoke their signatures on citizen initiative petitions violate article XI, sec *1075 tion 3 of the Florida Constitution. This is error. Based upon our well-established precedent interpreting the Florida Constitution, the statutory provisions do not violate article XI, section 3 because the provisions at issue are reasonable regulations necessary for ballot integrity. It is not unconstitutional for the Florida Legislature to allow electors to revoke their signatures when they may have been obtained by undue influence, intimidation, or fraud or when the electors have simply changed their minds after being persuaded on the merits otherwise. It is reasonable to empower electors with control over their own signatures so that they are not required to have their signatures on petitions counted against their will. The revocation statutes apply neutrally, without considering the merits of the proposed constitutional amendment.
The plurality's ruling that “the politically charged counter-petition revocation campaigns created by these provisions in operation ... would essentially eviscerate and render meaningless the citizen-initiative process”[21] is unsupported by any trial court findings and unsupported by Florida law. Rather, this ruling is based entirely upon speculation. If the revocation efforts contributed to an initiative not getting on the ballot, would it be (i) because of the mere existence of the revocation process as suggested by the plurality; (ii) because of the initiative’s lack of merit (causing electors to change them minds); or (iii) because of how the petition signatures were obtained (revocation because of fraud or undue influence in the initiative process)? Speculation on the answer does not support the plurality’s ruling that the revocation statutes and rales are facially unconstitutional.[22] Contrary to the plurality’s ruling, “politically charged counter-petition revocation campaigns ” do not render the statutory provisions unconstitutional. Our Florida Constitution is not so fragile and delicate that it cannot withstand the rigorous political debate of its citizens as to whether someone should place their signature on a citizen initiative.
Accordingly, I respectfully dissent.

I. BACKGROUND

Plaintiff, Florida Hometown Democracy, Inc. PAC, is a Florida political committee, registered pursuant to chapter 106, Florida Statutes, to sponsor and advocate for the adoption of a proposed amendment to Florida’s Constitution, titled “Referenda Required for Adoption and Amendment of Local Government Comprehensive Land Use Plans.”[23] FHD sued defendants Kurt S. Browning, in his capacity as Secretary of State and head of the Department of State, the State of Florida, and the Department of State, Division of Elections (collectively referred to as the State) in the Circuit Court for the Second Circuit, in and for Leon County, for declaratory judgment and injunction relief. In Count I, FHD alleged that:
38. Article XI, Section 3, Florida Constitution, is a self-executing provision of the State Constitution, which provides the fundamental authority for citizens to amend the State Constitution by initiative. Neither Article XI, Section 3, *1076 Florida Constitution, nor any other provision of the State Constitution, provides for, or authorizes the Legislature to enact, a revocation process or authorize Defendants to adopt rules for a revocation process.
39. The statutory amendments Section 100.371, Florida Statutes, affected by Section 25 of Chapter 2007-30, Laws of Florida, and the emergency rules promulgated by the Defendant Department of State, Division of Elections, impede the constitutional right of initiative and are not authorized by Article XI, Section 3, Florida Constitution.
Accordingly, FHD sought a declaratory judgment stating that the statutory amendments and emergency rules are unconstitutional under article XI, section 3, Florida Constitution, and injunctive relief from their application to citizen initiative petitions.
The Florida Legislature specifically provided the following revocation provisions at issue within an extensive act relating to elections:
Section 25. Effective August 1, 2007, subsections (1) and (3) of section 100.371, Florida Statutes, are amended, present subsection (6) of that section is renumbered as subsection (7) and amended, and a new subsection (6) is added to that section, to read:
100.371 Initiatives; procedure for placement on ballot.—
(1) Constitutional amendments proposed by initiative shall be placed on the ballot for the general election, provided the initiative petition has been filed with the Secretary of State no later than February 1 of the year the general election is held. A petition shall be deemed to be filed with the Secretary of State upon the date the secretary determines that valid and verified the petition forms have has been signed by the constitutionally required number and distribution of electors under this code, subject to the right of revocation established in this section.
(3) Each signature shall be dated when made and shall be valid for a period of 4 years following such date, provided all other requirements of law are met. The sponsor shall submit signed and dated forms to the appropriate supervisor of elections for verification as to the number of registered electors whose valid signatures appear thereon. The supervisor shall promptly verify the signatures within 30 days of receipt of the petition forms and upon payment of the fee required by s. 99.097. The supervisor shall promptly record each valid signature in the statewide voter registration system, in the manner prescribed by the Secretary of State, the date each form is received by the supervisor and the date the signature on the form is verified as valid. The supervisor may verify that the signature on a form is valid only if:

(a) The form contains the original signature of the purported elector.

(b) The purported elector has accurately recorded on the fomi the date on which he or she signed the form.

(c) The form accurately sets forth the purported elector’s name, street address, county, and voter registration number or date of birth.

(d) The purported elector is, at the time he or she signs the form, a duly qualified and registered elector authorized to vote in the county in which his or her signature is submitted.

The supervisor shall retain the signature forms for at least 1 year following the election in which the issue appeared on the ballot or until the Division of Elections notifies the supervisors of elections that the committee which circulated the *1077 petition is no longer seeking to obtain ballot position.

(6) (a) An elector’s signature on a petition form may be revoked within 150 days of the date on which he or she signed the petition form by submitting to the appropriate supervisor of elections a signed petition-revocation form adopted by rule for this purpose by the division.

(b) The petition-revocation form and the manner in which signatures are obtained, submitted, and verified shall be sitbjed to the same relevant requirements and timeframes as the corresponding petition form and processes under this code and shall be approved by the Secretary of State before any signature on a petition-revocation form is obtained.

(c) Supervisors of elections shall provide petition-revocation forms to the public at all main and branch offices.

(d) The petition-revocation form shall be filed with the supervisor of elections by February 1 preceding the next general election or, if the initiative amendment is not certified for ballot position in that election, by February 1 preceding the next successive general election. The supervisor of elections shall promptly verify the signature on the petition-revocation form and process such revocation upon payment, in advance, of a fee of 10 cents or the actual cost of verifying such signature, whichever is less. The supervisor shall promptly record each valid and verified petition-revocation form in the statewide voter registration system in the manner prescribed by the Secretary of State.

(7) (§) The Department of State may adopt rules in accordance with s. 120.54 to carry out the provisions of subsections (l)-(6) (-l)-(5).
Ch.2007-30, § 25, at 339-41, Laws of Fla.
In August 2007, the Division of Elections published the two emergency rules (rules 1SER07-1 and 1SER07-2), challenged by FHD, to immediately implement the revocation provisions set forth in section 25 of chapter 2007-30, Laws of Florida. The Division of Elections also published a “Notice of Development of Proposed Rules” regarding proposed rule 1S-2.0095, Florida Administrative Code, “Constitutional Amendment Petition Revocation” and proposed rule 1S-2.0091, Florida Administrative Code, “Constitutional Amendment Submission Deadline; Verifying Electors’ Signatures.” The proposed rules, which were identical to the emergency rules, became effective on October 15, 2007. Rule 1S-2.0095, Florida Administrative Code (2007), establishes the procedures for revocation sponsors to follow. The procedures mirror those for petition gatherers. Rule 1S-2.0091, Florida Administrative Code (2007), states that, on February 1 of the year in which the general election is held, verified revocations will be deducted from verified petition signatures to determine if the petition has the constitutionally required number of signatures for placement on the ballot.
The parties filed cross-motions for final summary judgment and a related stipulation of facts for the trial court’s consideration. The parties stipulated to the identity of the parties, the Division of Elections’ approval of FHD’s initiative petition form, FHD’s collection of a number of signatures, this Court’s issuance of an advisory opinion about the proposed amendment, the Legislature’s enactment of the revocation provisions, the Department of State’s adoption of rules implementing the revocation provisions, and the Division of Elections’ approval of a revocation petition sub *1078 mitted by Save Our Constitution, Inc. Upon hearing argument and reviewing these stipulated facts, the trial court granted summary judgment in favor of Browning. The trial court determined that the revocation provisions did not violate article XI, section 3 of the Florida Constitution or the due process and equal protection provisions of the United States and Florida Constitutions.
Specifically, the trial court order detailed the revocation provisions and analyzed article XI, section 3 of the Florida Constitution. The trial court accurately described the issue, stating: “The narrower question to be addressed by this Court is whether the Legislature may enact and the Defendants may implement the Revocation provisions to ensure ballot integrity.” In concluding that the revocation provisions are constitutional under article XI, section 3, the trial court stated:

The Revocation Provisions do not place any additional requirement or burden on the elector who intends to sign a petition, or to vote on the initiative once it is placed on the ballot. The Revocation Provisions do in fact grant the elector more poiver over his signature and decision to support the placement of an initiative on the ballot. The Provisions do not change or add to the requirements set forth in Article XI, Section 3 of the Florida Constitution. Furthermore, the Revocation Provisions do not in any way strengthen the poiver of the Legislature vis-a-vis the people as prohibited in the decisional authority.

... The reasons for the correctness of a decision to allow a voter or elector to change their mind was best stated by the Supreme Court of North Carolina as follows:
It is supposed that second thoughts are apt to be sounder, and this conviction has led courts to consider the right of withdrawal favorably, both as a matter of justice to the individual, who is entitled to apply his best judgment to the matter at hand, and as sound policy in community and public affairs, where the establishment of governmental institutions should rest upon mature consideration rather than be mere unnecessary excrescences upon the body politic, raised by the whim and fancy of a few7 men....
The facility with which signatures may be obtained to petitions is proverbial, and in other instances the amount and character of the persuasion is unknown. “What good reason is there why one who has changed his mind since signing a petition, and who concludes that either the public good or his own interest is not in harmony with the petition, may not recede from his signature before action taken thereon? The rule which permits a withdrawal at any time before final action upon the petition is much more likely to get at the real and mature judgment of the voters, and it is calculated to discourage a hasty presentation of a petition for signatures without a fall disclosure of the real merits of the question. Circula-tors of the petition can usually avoid sufficient withdrawals to defeat the petition by taking care that the matter is fully understood by those to whom it is presented for signature.” And in considering the effect of the withdrawal upon other petitions we must remember that the defeat of an aspiration is not destruction of a right.
Idol v. Hanes, 219 N.C. 723, 14 S.E.2d 801, 802-803 (1941) (citations omitted).
Fla. Hometown Democracy, Inc. PAC v. Browning, No.2007-CA-2278, slip op. at 5-6 (Fla.2d Cir.Ct. Nov. 27, 2007) (empha *1079 sis added). I agree with the well-reasoned opinion of Judge Charles Francis.
FHD appealed the trial court’s decision to the First District, which reversed the trial court and held that the revocation provisions violated article XI, section 3 of the Florida Constitution. Fla. Hometown Democracy, Inc., PAC v. Browning, 980 So.2d 547 (Fla. 1st DCA 2008). The First District reasoned that the provisions burden the process with regulations that are not provided for in the Florida Constitution and are also not necessary for the orderly presentation of initiative-generated proposals.
On appeal before this Court, Browning argues that the First District misconstrued this Court’s decisions addressing ballot initiatives and, thereby, erred in holding that the revocation provisions violate article XI, section 3 of the Florida Constitution.

II. ANALYSIS

Article XI, section 3 of the Florida Constitution reserves to the people the right to propose revisions and amendments to the Florida Constitution via initiative petition:
Initiative. — The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the custodian of state records a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.
As the text indicates, article XI, section 3 specifically addresses only four issues: (1) the power to propose revisions and amendments by initiative rests in the people; (2) the proposal must generally be limited to a single subject; (3) the petition must be filed with the Secretary of State; and (4) the petition must be signed by the appropriate number of electors.
“The legislative branch looks to the [Florida] Constitution not for sources of power but for limitations upon power.” Fla. House of Representatives v. Crist, 999 So.2d 601, 611 (Fla.2008) (quoting State ex rel. Green v. Pearson, 153 Fla. 314, 14 So.2d 565, 567 (1943)), cert. denied, — U.S. -, 129 S.Ct. 1526, 173 L.Ed.2d 657 (2009); see also Sun Ins. Office, Ltd. v. Clay, 133 So.2d 735, 742 (Fla.1961) (“Although the Federal Constitution bestows power only in specific grants and is a document of delegated powers, the Florida Constitution is a limitation on power as distinguished from a grant of power, particularly with regard to legislative power.”) (quoting 6 Fla. Jur. Constitutional Law, § 37 (1956)).
Consistent with these well-established principles regarding our state constitution and legislative power, the Florida Legislature regulates the initiative process well beyond the four issues addressed in the text of article XI, section 3 to ensure ballot integrity and a valid election process. For example, section 101.161(1), Florida Statutes (2007), requires any initiative amendment to contain a ballot summary, which is not prescribed by article XI, section 3. The ballot summary must be limited to seventy-five words, prepared by the petition sponsor, and approved by the Secretary of State. This Court in Wadhams v. Board of County Commissioners of Sarasota County, 567 So.2d 414, 416 (Fla.1990), *1080 found the ballot summary to be mandatory and in Advisory Opinion to the Attorney General re Fish & Wildlife Conservation Commission, 705 So.2d 1351, 1355 (Fla.1998), struck a petition from appearing on the ballot because it lacked the statutorily prescribed ballot summary.
Similarly, section 100.371(2), Florida Statutes (2007), contains several preconditions that are not expressly found in the Florida Constitution.[24] Furthermore, section 100.371(3), Florida Statutes (2007), prohibits the bundling of petitions together for the purposes of garnering signatures. Section 100.371(3) also mandates that the signature forms correspond to four statutorily prescribed requirements that are not expressly found in the Constitution.[25] Moreover, section 100.371(4), Florida Statutes (2007), requires petition signatures to be verified before they can be filed with the Secretary of State.
In summary, prior to the enactment of the revocation provisions at issue here, the Legislature regulated who may propose an amendment, the process of submitting the proposal, and the content of the proposal. These are specific requirements on the initiative process that are not prescribed by the Florida Constitution. And as evidenced by this Court’s approval of these numerous regulations, lack of constitutional prescription is not a barrier to the Legislature’s authority to regulate the citizen initiative process.[26]
More specifically, this Court has issued three opinions analyzing the Legislature’s authority to regulate the citizen initiative process under article XI, section 3 of the Florida Constitution: State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561 (Fla.1980); Krivanek v. Take Back Tampa Political Committee, 625 So.2d 840 (Fla.1993); and Smith v. Coalition to Reduce Class Size, 827 So.2d 959 (Fla.2002).
In Firestone, 386 So.2d at 567, this Court upheld the constitutionality of a statute requiring local supervisors of elections to verify signatures on initiative petitions. In so holding, this Court set forth the rule that we have employed in our subsequent citizen initiative decisions, a rule which recognizes the Legislature’s duty and authority to enact reasonable regulations of the initiative process to ensure ballot integrity. Specifically, we stated:
The four methods of amending our constitution must be considered as a whole to effect their overall purpose. Smathers v. Smith, 338 So.2d 825 (Fla.1976). They are delicately balanced to reflect the power of the people to pro *1081 pose amendments through the initiative process and the power of the legislature to propose amendments by its legislative action without executive check.... In considering any legislative act or administrative rule which concerns the initiative amending process, we must be careful that the legislative statute or implementing rule is necessary for ballot integrity since any restriction on the initiative process would strengthen the authority and power of the legislature and weaken the power of the initiative process. The delicate symmetric balance of this constitutional scheme must be maintained, and any legislative act regulating the process should be allowed only when necessary to ensure ballot integrity. We do, however, recognize that the legislature, in its legislative capacity, and the secretary of state, in his executive capacity, have the duty and obligation to ensure ballot integrity and a valid election process. Ballot integrity is necessary to ensure the effectiveness of the constitutionally provided initiative process.
Firestone, 386 So.2d at 566-67 (emphasis added). Further, this Court in Firestone explained that “verification is essential to ballot integrity and the legislature and the secretary may prescribe reasonable regulations to ensure an expeditious and proper verification process.” Id. at 567 (emphasis added).
In Krivanek, 625 So.2d 840, this Court decided the constitutional validity of a Division of Elections opinion interpreting section 98.081, Florida Statutes (1991), which required the local supervisors of elections to update their voter registration rolls during each odd-numbered year. More specifically, the statute required the supervisors to mail an information card to registered voters who had not voted in the prior two years. See Krivanek, 625 So.2d at 841-42. Thereafter, the registered voter had thirty days to return the information card and, if the voter did not return the card within that time, the voter was temporarily removed from the registration books. Id. If the voter did not return the card within three years or did not re-register during that time, the voter was removed from the registration books altogether. Id. This Court explained that “[t]he purpose of these provisions is to assure that voters who have not voted in the last two years are still alive and still reside at the localities indicated on the voter registration rolls.” Id. at 842.
The Division of Elections issued an advisory opinion, which interpreted section 98.081 and determined that any voter who had been temporarily removed from the registration books was ineligible to participate in the initiative process. Id. at 843. Thus, an elector who had been temporarily removed could not validly sign an initiative petition until his or her registration became current. Id.
This Court concluded that the statute and subsequent Division advisory opinion did not violate article XI, section 3 of the Florida Constitution. Id. at 845. We held that the temporary removal of electors from the registration books and their corresponding inability to participate in the citizen initiative process prevented fraud and was “necessary to preserve ballot integrity and a valid election process.” Id. at 844. This Court stated, “We do not find the interpretation rendered by the Division of .Elections to be unreasonable or unduly burdensome.” Id.
In reaching this holding, this Court repeated the rule from Firestone that reasonable regulations of the initiative process to ensure ballot integrity are not prohibited. However, in Krivanek, this Court added to the rule promulgated in Firestone by explicitly explaining that reason *1082 able regulations that prevent fraud are necessary to preserve ballot integrity and a valid election process. Specifically, this Court stated:
Given its constitutional underpinnings, the right to petition is inherent and absolute. This does not mean, however, that such a right is not subject to reasonable regulation. Quite the contrary, reasonable regulations on the right to vote and on the petition process are necessary to ensure ballot integrity and a valid election process. See, e.g., State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561 (Fla.1980) (legislature and secretary of state may impose reasonable regulations on process of petition validation to ensure expeditious and proper verification of petition signatures). Section 98.081’s requirements are an example of such reasonable regulations.
Id. at 843 (emphasis added). This Court then continued:
The prevention of fraud ... [is] necessary to preserve ballot integrity and a valid election process. Consequently, we find that the minimal burden of either voting at least once every two years or notifying the supervisor in writing that one’s status as a qualified elector has not changed is reasonable.
Id. at 844 (emphasis added); see also Crawford v. Marion County Election Bd., 553 U.S. 181, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (upholding state statute requiring a government-issued photo identification in order to vote and explaining that Indiana had a sufficient interest to deter and prevent fraud even if the identification regulation burdened some voters).
Relying on Knvanek, the plurality erroneously suggests that regulations of the initiative process must be conducted by neutral election officials in order to be constitutional. See e.g., plurality op. at 1058 (“[AJuthentication efforts intended to preserve the integrity of the petition process should be conducted and supervised by neutral election officials rather than biased advocates.”); see also specially concurring op. at 1074 (“[WJhen necessary to ensure ballot integrity or a valid election process, any statute or regulation must be administered by neutral election officials.”). But when this Court discussed neutral election officials in Knvanek, this Court was construing a statute that expressly required action by neutral election officials. See Knvanek, 625 So.2d at 845 (“The statute requires an affirmative act of notification by a temporarily removed elector to a neutral election official before the elector can vote.”). Therefore, Kriva-nek does not support the plurality’s generalized conclusion that regulations of the initiative process must be administered by neutral election officials to pass constitutional muster.
Tn Smith, 827 So.2d at 960, this Court held that a statute requiring financial impact statements to appear on the ballot after summaries of the initiatives violated the Florida Constitution. However, in Smith, this Court again repeated and applied the rule from Firestone that is quoted above. See Smith, 827 So.2d at 963 (“Pursuant to the standard announced in this Court’s opinion in [Firestone ], ‘[i]n considering any legislative act or administrative rule which concerns the initiative amending process, we must be careful that the legislative statute or implementing rule is necessary for ballot integrity.’ 386 So.2d at 566. Therefore, in the instant case, the Court must decide whether chapter 2002-390 is necessary to ensure ballot integrity. The circuit court concluded below that it was not. We agree.”) (footnote omitted).
Accordingly, this Court’s ballot initiative decisions have all held that reasonable reg *1083 ulations of the citizen initiative process do not violate article XI, section 3 of the Florida Constitution if the regulations are necessary to ensure ballot integrity, including the prevention of fraud. And, under our decisions in Firestone, Krivanek, and Smith, the revocation provisions at issue here are reasonable regulations necessary to ensure ballot integrity; therefore, they are constitutional.
Here, the primary purpose of the revocation provisions is to prevent fraud and offer the electors an avenue to rectify any misrepresentation that occurred during the petition gathering process. The regulations here specifically address a type of fraud that the current regulations do not account for. In particular, the regulations address fraud in the inducement of the signature and fraud in the actual signing.[27] Consequently, the revocation provisions serve to prevent fraud during the petition initiative process and are, therefore, necessary for ballot integrity. See Krivanek, 625 So.2d at 844 (“The prevention of fraud ... [is] necessary to preserve ballot integrity and a valid election process.”).
There are numerous examples of fraudulent practices on the part of initiative proponents. For example, the First District heard a case in 2006 in which the initiative proponent admitted “it presented petitions that contained forged and fictitious names to fraudulently create the illusion that it had complied with the mandatory constitutional prerequisites.” Floridians Against Expanded Gambling v. Floridians for a Level Playing Field, 945 So.2d 553, 561 (Fla. 1st DCA 2006) (explaining that fraud in the gathering of petitions is not a minor or technical defect but one that requires an initiative to be declared invalid if proven). Moreover, the Senate Staff Analysis for Committee Substitute for Senate Bill 900, in which the language at issue originated, cited a report from Santa Rosa County in which two signature gatherers were charged with over forty counts each of forging documents as well as an FDLE investigation into voter fraud of those tasked with gathering signatures. Fla. S. Comm, on Judiciary, CS for SB 900 (2007) Staff Analysis 1 (Apr. 18, 2007) (on file with Comm.).
The plurality concludes that there is no need for the revocation statutes because signatures obtained fraudulently may be set aside by litigation, relying on Floridians Against Expanded Gambling, 945 So.2d at 561-62 (explaining that forged and fraudulent signatures may not be used to satisfy the mandatory signature requirements of article XI, section 3). However, it is a very different undertaking for an elector to initiate or join a lawsuit to set aside a signature than to simply sign a form. Litigation is by nature adversarial, likely costly, and unfortunately will probably take a long time. For example, the lawsuit in Floridians Against Expanded Gambling is ongoing on remand from the First District. To set aside a simple legislative process that is quick and efficient and, instead, place reliance on the judicial process to remedy fraudulently obtained signatures is misplaced.
In addition to ensuring ballot integrity by preventing fraud, the revocation provisions ensure ballot integrity by empowering the elector with full control over his signature. Enabling an elector to maintain control over his signature ensures that the proposed amendment has the constitu *1084 tionally required level of support and accurately reflects the will of the electors.
As set forth in Firestone, Knvanek, and Smith, the Legislature may prescribe reasonable regulations on the citizen initiative process to ensure ballot integrity. Here, several factors contribute to the reasonableness of the revocation provisions. First, the revocation provisions and the rules implementing them are identical to those for the petition gathering process.[28] Stated otherwise, the regulations on initiative opponents seeking revocations parallel the regulations on petition sponsors. Section 100.371(6)(b), Florida Statutes (2007), makes clear that the party seeking revocations must abide by the “same relevant requirements and timeframes as the corresponding petition form and processes.” Prior to the enactment of the revocation provisions, petition sponsors were required to register as a political committee.[29] The revocation provisions do not alter that requirement or make an already political process somehow more political by requiring the revocation proponents to play by the same rules as the petition gatherers.
Second, the revocation provisions give both parties, petition proponents seeking signatures and petition opponents seeking revocations, the same number of opportunities at obtaining a signature. By enacting rules and regulations that are the same for both the petition gatherers and the revocation sponsors, the Legislature has ensured that both parties have equal opportunities while granting the elector more control over his signature. Prior to the enactment of the revocation provisions, an elector signing a petition was bound by that signature for a period of four years.[30] The practical effect of the revocation provisions is to allow an elector to sign a petition once and a revocation once. Therefore, the revocation provisions provide the elector more control over his or her signature and also do not take away the ability of petition sponsors to gather signatures.
Third, the process is time-certain, thereby ensuring that all revocations are complete and submitted by the same date that signatures must be filed with the Secretary of State. The revocation process is limited in duration so as to coincide with the Secretary of State’s already existing timeline for the submission of signed petitions for placement on the ballot. Subsection 6(a) of the revocation provisions requires all signature revocations to be signed within 150 days of the original petition form signing. While an elector has 150 days to revoke, a sponsor may hold signatures for validation well beyond that period up to four years. Moreover, the revocations must be filed with the Secretary of State by February 1, which is identical to the requirement for petition sponsors. Then, after the revocations are deducted from the validly signed petitions, the Secretary can make a determination of whether the sponsor satisfied the constitutionally required level of support.[31] These *1085 regulations establish reasonable time-frames in which the revocation process is to operate.
Fourth, the regulations are reasonable when compared to those from Firestone and Krivanek In Firestone, the regulations required local supervisors of elections to verify every signature on a petition form, thus drastically increasing the supervisors’ workload, yet this Court said it was reasonable. Similarly, in Krivanek, the regulations were deemed reasonable even though 462 petition signatures were voided, keeping an initiative from appearing on the ballot. The regulations here give more power to the elector and do not radically increase the workload or void signatures from petitions without the elector’s consent. Thus, the regulations here are no less reasonable than those upheld in Firestone or Krivanek.
Fifth, the revocation provisions are reasonable because they do not overburden or undermine the citizen initiative process. It is undisputed that the constitution reserves the power to propose amendments via the initiative process to the people. See art. XI, § 3, Fla. Const. This Court in Firestone, 386 So.2d at 566 (emphasis added), stated that “we must be careful that the legislative statute or implementing rule is necessary for ballot integrity since any restriction on the initiative process would strengthen the authority and power of the legislature and weaken the power of the initiative process.” Plainly, it was the restricting and weakening of the initiative process that this Court was concerned with. It is also well settled that the Legislature may act in any area that is not prohibited by or in conflict with the constitution. See Metro. Dade County v. Bridges, 402 So.2d 411, 413-14 (Fla.1981). Here, there has been no evidence presented showing that the revocation provisions infringe upon or conflict with the right of the people to propose an amendment to the constitution. Therefore, the Legislature is not prohibited from enacting the revocation provisions.
In this case, as the trial court accurately noted, the revocation provisions do not impose new restrictions on petition gatherers, nor do they impose new restrictions on the proponents of an amendment. Furthermore, they do not impede the signors of petitions in any way or strengthen the power of the Legislature vis-a-vis the people. To the contrary, the revocation provisions provide individual electors with more control and more power over their signatures. Granting an elector the right to revoke his signature within a specified timeframe does not lessen the elector’s power. The provisions at issue here place the power in the hands of the people, whereas, prior to their enactment, an elector had no authority over his signature once a petition was signed.[32]
It is also important to recognize that the constitution does not guarantee a spot on the ballot to anyone who proposes an amendment. The only constitutional guarantee is the right to propose amendments. The revocation provisions do not mandate that an elector must revoke his signature, nor do the provisions impose new restrictions on the process of proposing amendments. Consequently, the revocation provisions are reasonable and do not infringe upon the constitutional guarantee that one has the right to propose amendments.
Accordingly, when analyzed under our well-established precedent interpreting the Florida Constitution, the revocation provisions at issue do not violate article XI, section 3. Rather, the regulations are rea *1086 sonable and necessary for ballot integrity. They prevent fraudulent practices by petition proponents. They also empower, rather than inhibit, the people’s constitutional right to propose an amendment through the initiative process. And, importantly, the revocation provisions are not prohibited by, or in conflict with, the Florida Constitution.

III. CONCLUSION

The plurality opinion misapplies this Court’s precedent relating to article XI, section 3 of the Florida Constitution. Based upon a proper application of our precedent, the revocation provisions do not violate article XI, section 3 because they are reasonable regulations necessary for ballot integrity. It is reasonable for the opponents seeking revocation to be governed by regulations that are essentially the same as those that govern initiative petition sponsors. Further, the revocation provisions are necessary for ballot integrity because they allow electors to revoke their signatures when those signatures have been obtained by undue influence, intimidation, or fraud or when the electors have changed them minds.
The fact that the revocation process is political does not make it unconstitutional. The citizen initiative process is itself inherently political.
Therefore, I respectfully dissent.
CANADY, J., concurs.

. Plurality op. at 1057.

. The plurality also errs by not even attempting to apply a severability test as required by well-settled Florida law. See Ray v. Mortham, 742 So.2d 1276, 1280-81 (Fla.1999) (discussing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions).

.Plaintiff Lesley G. Blackner is the president and chair of Florida Hometown Democracy, and they are together collectively referred to as FHD herein.

. The petition sponsor must register as a political committee; the petition sponsor must submit the text of the amendment to the Secretary of State with the form on which the signatures will be affixed; and the Secretary must approve the petition form. § 100.371(2), Fla. Stat. (2007).

. Section 100.371(3) provides:
The supervisor may verify that the signature on a form is valid only if:
(a) The form contains the original signature of the purported elector.
(b) The purported elector has accurately recorded on the form the date on which he or she signed the form.
(c) The form accurately sets forth the purported elector’s name, street address, county, and voter registration number or date of birth.
(d) The purported elector is, at the time he or she signs the form, a duly qualified and registered elector authorized to vote in the county in which his or her signature is submitted.

.This Court upheld the verification requirement, stating that ''[n]othing is said in the constitution concerning verification." State ex rel. Citizens Proposition for Tax Relief v. Firestone, 386 So.2d 561, 566 (1980).

. The verification provisions upheld in Firestone ensure that the elector is actually registered and authorized to sign a petition, and the regulations upheld in Krivanek ensure that the voter registration rolls accurately reflect those residing in the county. However, neither addresses fraud in the inducement or fraud in the actual signing.

. Section 100.371 (6)(b), Florida Statutes (2007), provides that "[t]he petition-revocation form and the manner in which signatures are obtained, submitted, and verified shall be subject to the same relevant requirements and timeframes as the corresponding petition form and processes.”

. Section 100.371(2), Florida Statutes (2007), provides that ”[t]he sponsor of an initiative amendment shall, prior to obtaining any signatures, register as a political committee.”

. Section 100.371(3), Florida Statutes (2007), provides that ”[e]ach signature shall be dated when made and shall be valid for a period of 4 years following such date."

. This Court in Knvanek, 625 So.2d at 844-45, found it reasonable to deduct signatures from the total amount even after the petitions were submitted.

. Section 100.371(3), Florida Statutes (2007), provides that "[e]ach signature shall be dated when made and shall be valid for a period of 4 years following such date.”